WIIK, Respondent, vs. DEPARTMENT OF TAXATION, Appellant.

*September 12—October 22, 1946.*

For the appellant there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

For the respondent there was a brief by *Brill, Maslon, Grossman & Brill* of Minneapolis, Minnesota, and *Giles F. Clark* of Milwaukee, and oral argument by *A. L. Brill.*

FRITZ, J.   The material facts on this appeal are the following.   Since 1934 the respondent A. I. Wiik resided in Minnesota and has been employed as an estimator and superintendent

of construction by the Ring Construction Company (hereinafter called "Ring") of Minneapolis. Up to April 1, 1942, this employer paid Wiik $200 per month plus ten per cent of the net profits made by his employer's performance of its contracts for construction work on which Wiik made estimates and superintended the work. In March, 1942, after Wiik had estimated for Ring the cost of its execution of certain construction work at Camp McCoy for the United States government, there were awarded Ring contracts totaling $6,500,000. On April 1, 1942, Ring and Wiik entered into a written contract in and by which Wiik—designated as an "employee" of Ring and the latter as his "employer,"—agreed that he was to devote all of his time and attention exclusively in the supervision of the work required in the construction and erection of that portion of the Camp McCoy project contracted to be performed by Ring, and that Wiik was to discharge such duties and perform such functions in and about such construction of said project as may be required by Ring from time to time, and under its direction and control; and that Wiik agreed that he will remain in the employ of Ring and discharge such duties and functions diligently and in good faith, until the project shall have been fully completed. And Ring agreed to pay to Wiik as compensation for his services five per cent of the net profits earned by Ring in its performance of the project and Ring further unconditionally guaranteed Wiik that the amount to be received by him on account of such portion of the profits earned by Ring in its performance of the project will be at least $3,000 per month for the period commencing April 1, 1942, to the day when Ring's construction work on the project has been completed; and Ring agreed to pay the sum of $3,000 to Wiik at the rate of $250 per month during the course of the work and the balance upon the completion thereof.

On April 5, 1942, Wiik started the work at Camp McCoy and continued there until it was finished and he left on

October 25, 1942. His work in relation thereto was his original work of estimating and getting the jobs ready for estimate; and after the contracts were awarded, he took care of ordering and expediting materials, getting out monthly or bimonthly reports or estimates to the government and additional estimates during the job, and of all extras and changes, etc., and during acceptance by the government he went through the buildings with the area engineers. Starting with April, 1942, and ending with October, 1942, he received $125 semi-monthly from Ring, and also received $3,000 on October 29, 1942, and $16,250 on October 31, 1942, making a total of $21,000 for the seven months. Wiik did not make any Wisconsin income tax return in relation to his income, but the Wisconsin Department of Taxation in May, 1944, assessed his income for 1942 at $48,000. He made an application for abatement of such taxes, on the ground that such income was not subject to taxation in Wisconsin, and that he did not receive $48,000; and the state board of tax appeals finally ordered the assessment of his 1942 Wisconsin income reduced to the $21,000 and affirmed the assessment of income taxes on that amount. On an appeal by Wiik, the circuit court for Monroe county reversed the board's order and adjudged that the assessment be canceled and abated in its entirety. The Wisconsin Department of Taxation appealed from the judgment to that effect.

The Department of Taxation contends that the sum of $21,000 received in 1942 by Wiik from Ring was *income derived by him from "business transacted within the state;"* and that therefore he was liable for income taxes thereon under the provision in sec. 71.01, Stats., that—

"There shall be assessed, levied, collected and paid a tax on all net incomes as hereinafter provided, by every person residing within the state or by his personal representative in case of death; and *by every nonresident* of the state, *upon such income as is derived from* property located *or business transacted within the state,* except as hereinafter exempted."

On the other hand, Wiik contends that the sum of $21,000 was income which he derived from personal services performed by him and which therefore, under the following provisions in sec. 71.02 (3) (c), Stats., follows his place of residence as the recipient thereof, and, consequently, is not subject to income taxation in view of these provisions, to wit:

"Income derived from rentals and royalties from real estate or tangible personal property, or from the operation of any farm, mine or quarry, or from the sale of real property or tangible personal property shall follow the situs of the property from which derived. *All other income, including* royalties from patents, *income derived from personal services, professions and vocations* and from land contracts, mortgages, stocks, bonds and securities or from the sale of similar intangible personal property, *shall follow the residence of the recipient,* except as provided in section 71.095."

Under and by virtue of the provisions to the above-stated effect in the written contract between Ring and Wiik, and the above-stated facts and circumstances, which were proven as to their acts and conduct, and in their performance of that contract, the relationship between them was solely that of employer and employee. As such employee under that contract, Wiik was required to and did devote his time and attention to the supervision of the construction work executed by Ring at Camp McCoy, and to his performance for Ring under its "direction and control" of his duties and such functions as Ring required. Its president, M. J. Ring, was in charge of the construction of the project, and subject to his control and directions, Wiik followed his orders. Wiik derived no pecuniary benefit from the construction of the Camp McCoy project by Ring other than the compensation provided for in his contract of employment with Ring to be paid for the personal services which he was required to perform for Ring; and their agreement did not provide for participation by him in any losses which his employer might incur. The evidence as to the facts and circumstances stated above clearly

establishes that the personal services performed by Wiik for Ring under its actual control and direction, and for which it compensated him by payment of the $21,000 in question were rendered wholly in the performance by Wiik, as the employee, of his duties and obligations to Ring, as his employer, under their existing contract of employment; and that, consequently the performance thereof for his employer by Wiik did not constitute the transaction of business on his part in this state.

The fact that under their contract of employment the compensation which was to be paid by Ring to Wiik for the services rendered by him for his employer was to be five per cent of the net profits earned by Ring in its performance of the Camp McCoy project (with the guaranty by Ring that the amount to be paid to Wiik will be equal to at least $3,000 per month) did not change their status as employee and employer to some other relationship. As we said in *General Bronze Corp. v. Schmeling,* 213 Wis. 150, 155, 250 N. W. 412,—

"This court can take notice of the fact that payment of portions of the net profits of a business as added compensation or as a bonus is not regarded by the business world generally as inconsistent with a relationship of employer and employee, and we know of no rule of law, and are cited to no case, holding that this manner of compensating employees raises the latter to the status of enterprisers."

So in this case the mere fact that the amount of the compensation to be paid to Wiik was to be an agreed percentage of Ring's net profits did not change Wiik's status from that of an employee to that of a joint adventurer, a partner in a partnership, or of an independent contractor transacting business on his own behalf. As this court said in *Wagner v. Buttles,* 151 Wis. 668, 676, 139 N. W. 425,—

"There are a multitude of decisions by other courts which hold that an agreement to contribute labor or property in consideration of receiving a part of the profits of some enterprise does not create a partnership where such profits are paid as compensation for the thing contributed. [Citing cases.]"

In relation to the meaning of the phrase "Income derived from personal services" as used in sec. 71.02 (3) (c), Stats., we said in *State ex rel. Lerner v. Tax Comm.* 213 Wis. 267, 271, 251 N. W. 456,—

" 'Income derived from personal services' has not heretofore been defined by this court. Comprehensively and exactly to define it would be difficult if not impossible. We think it fairly clear that the legislature meant by 'all' income derived from personal services' *such income or gains as result from the performance of services or labor without the material aid of capital.*"

Applying this definition to the income of Wiik, which is in question herein, it is "income derived from his personal services" because it does not appear that he had any capital invested in either the practice of his profession, or in Ring's business, or otherwise. The circumstance that the income derived by Wiik directly from his personal services for his employer came to him indirectly from income which Ring had derived from business transacted by it in Wisconsin cannot be deemed to render Wiik's compensation for his services subject to taxation as income derived from business transacted in this state.

*By the Court.*—Judgment affirmed.