State ex rel. Lerner, Appellant, vs. Tax Commission and another, Respondents.

*November 7—December 5, 1933.*

*Maurice Weinstein* of Milwaukee, for the appellant.

For the respondents there was a brief by the *Attorney General, F. C. Seibold,* assistant attorney general, *William A. Zabel,* district attorney of Milwaukee county, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Seibold.*

NELSON, J. The facts are not in dispute. During the years 1927, 1928, and 1929 the petitioner was a resident of the state of Wisconsin. He was born in this state and continually resided here. During the years involved in this

controversy he was engaged in procuring contracts from sheriffs' and police officers' associations in various states other than Wisconsin, to publish convention books and year books for and on behalf of such associations. His practice was to call upon the officers of such associations and to procure from them, if possible, contracts appointing him as their agent to solicit advertising for such publications. He agreed to solicit the advertising, to collect the moneys due therefor, to edit, print, publish and distribute copies of such publications as agreed, and to pay over to the contracting associations all moneys collected by him for advertising space. The contracting associations, under the terms of the contracts, retained twenty-five per cent. of the gross receipts and remitted the remaining seventy-five per cent. thereof to the petitioner. Out of the seventy-five per cent. of the gross receipts received by the petitioner he paid the commissions of those engaged by him to solicit advertising which amounted to forty-five per cent. of the amounts charged for advertising space in the publications; and also paid to the superintending manager of the solicitors five per cent. Out of the twenty-five per cent. remaining the petitioner paid the expenses of printing and distributing the publications and the remainder constituted his profits. The income derived by petitioner from such contracts obtained by him during the years in question was apparently quite large, since the assessor of incomes assessed additional income for the years in question, as follows:

For the year 1927.................. $2,353 21
For the year 1928.................. 13,770 94
For the year 1929................. 8,090 00

The petitioner contends that the additional income mentioned was derived from a business conducted by him outside of the state of Wisconsin and is therefore not taxable within this state. The Tax Commission contends that such

income was derived from personal services and is taxable by the state of Wisconsin.

It is conceded that this controversy is ruled by the Statutes of 1927. Sec. 71.01 provides in part:

"There shall be assessed, levied, collected and paid a tax on all average net incomes as hereinafter provided, by every person residing within the state or by his personal representative in case of death."

Sec. 71.02 (3) (c) provides:

"For the purposes of taxation income from mercantile or manufacturing business, not requiring apportionment under paragraph 71.02 (3) (d) shall follow the situs of the business from which derived. Income derived from rentals and royalties from real estate or tangible personal property, or from the operation of any farm, mine or quarry, or from the sale of real property or tangible personal property shall follow the situs of the property from which derived. All other income, including royalties from patents, income derived from personal services, professions and vocations and from land contracts, mortgages, stocks, bonds and securities or from the sale of similar intangible personal property, shall follow the residence of the recipient, except as provided in section 71.095."

Sec. 71.02 (3) (d) provides in part as follows:

"Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state."

In enacting sec. 71.02 (3) (c) the legislature classified income for purposes of taxation as follows: (1) income derived from mercantile or manufacturing business not requiring apportionment under paragraph 71.02 (3) (d), which should follow the situs of the business from which derived; (2) income derived from rentals and royalties from real estate or tangible personal property, from the operation of any farm, mine or quarry, or from the sale of real property or tangible personal property, which should follow the

situs of the property from which derived; and (3) all other income, including royalties from patents, income derived from personal services, professions and vocations, and from land contracts, mortgages, stocks, bonds and securities or from the sale of similar intangible personal property, which should follow the residence of the recipient.

If the income involved herein was derived from a mercantile or manufacturing business, it is obviously not taxable by the state of Wisconsin since none of it was earned in this state. If the income may properly be held to have been derived from personal services, then it is clearly taxable at the residence of the recipient, which is concededly Milwaukee county.

Considering the legislative intent expressed in sec. 71.02 (3) (c), it seems clear to us that the petitioner's income, derived from the work in which he was engaged, cannot be classified as income from a mercantile or manufacturing business but must be held to be within the classification "all other income . . . including . . . the income derived from personal services."

"Income derived from personal services" has not heretofore been defined by this court. Comprehensively and exactly to define it would be difficult if not impossible. We think it fairly clear that the legislature meant by "all income derived from personal services" such income or gains as result from the performance of services or labor without the material aid of capital. "Earnings" as used in an early statute exempting from execution the "earnings of a debtor" was held to mean earnings for personal services and defined to be "the gains of the debtor derived from his services or labor without the aid of capital." *Brown v. Hebard*, 20 Wis. *326. "Income derived from personal services" is substantially equivalent to "income derived from personal earnings." While the legislature may not have had in mind

the definition of "earnings" stated in *Brown v. Hebard, supra,* we think that case throws considerable light on what is meant by "personal services."

Numerous cases involving controversies between taxpayers and the government of the United States under the federal income tax laws have been cited by counsel and considered by us. The cases cited relate to the question as to whether certain corporations involved therein were entitled to classifications for purposes of federal income taxation as "personal service corporations." *George B. Ricaby Co. v. Nauts,* 19 Fed. (2d) 271; *Fuller & Smith v. Routzahn,* 23 Fed. (2d) 959; *North American Ry. Constr. Co. v. Commissioner of Internal Revenue,* 27 Fed. (2d) 493; *Potts-Turnbull Advertising Co. v. United States,* 37 Fed. (2d) 970; *Alexander, Conover & Martin v. Commissioner of Internal Revenue,* 45 Fed. (2d) 383; *G. M. Basford Co. v. United States,* 59 Fed. (2d) 259. While these cases and others which might be cited are not controlling, there is language in many of them which is helpful in understanding what is meant by "income derived from personal services."

Here it appears that the efforts of the petitioner were primarily responsible for the production of the income. He organized and successfully promoted the enterprise which obtained the contracts from sheriffs' and police officers' associations and dominated and directed the force of employees who solicited contracts for advertising space in the publications. He was the trained and experienced "go-getter." It was his skill, experience, and executive ability that obtained the contracts and created the opportunity for the solicitors to perform the work of obtaining contracts for advertising space. Without his skill, experience, and executive ability no income would have been produced. He was the directing head of the concerted effort made by himself and his employees who were paid on a commission basis. He maintained no office and employed no capital in obtaining

such contracts except the very nominal sums necessary to cover personal expenses. The mere fact that he employed solicitors does not militate against the conclusion that the income was derived from personal services. *Brown v. Hebard, supra.* Income may properly be held to be derived from personal services even though a large part of the gross earnings is paid out to employees. *Alexander, Conover & Martin v. Commissioner of Internal Revenue, supra; George B. Ricaby Co. v. Nauts, supra.*

We conclude that the income in question here was derived from the personal services of the petitioner and was properly taxable at the situs of his residence.

*By the Court.*—Judgment affirmed.