# WILLIAM C. BECHERT v. COMMISSIONER OF TAXATION.[1]

December 21, 1945.

No. 33,998.

*Hayner N. Larson* and *Faegre & Benson,* for relator.

*J. A. A. Burnquist,* Attorney General, and *T. R. Anderson,* Special Assistant Attorney General, for respondent.

MAGNEY, JUSTICE.

*Certiorari* to review an order of the board of tax appeals affirming an order of the commissioner of taxation.

Relator, William C. Bechert, has been a resident of the city of Minneapolis for a number of years. He is a certified public accountant. Touche, Niven & Company is a partnership engaged in the practice of public accounting, with its principal place of business in the city of New York. It provides a nationwide accounting service. During the fiscal year ending September 30, 1939, relator was one of the 17 partners. The partnership has offices in seven cities in the United States. Relator has been in charge of

[1]Reported in 21 N. W. (2d) 101.

the Minneapolis office since 1921 and has been a member of the partnership since 1926. For the year in question, 1939, relator received a salary, interest on invested capital, and a distributable share of all partnership profits. Respondent contends that all of relator's income is subject to the Minnesota income tax, since he is a resident of the state of Minnesota and his income is received from a business consisting principally of the performance of personal or professional services. Relator contends that he is not taxable in Minnesota on such distributable profits, except to the extent that they may result from the operations of the Minneapolis office. In his return, relator reported for tax an amount of partnership income which, taking into account the interest of another partner likewise attached to the Minneapolis office, exceeded the net income of the Minneapolis office for the partnership year ending September 30, 1939. Respondent proposed to add to relator's income a further amount of partnership income which the relator had reported for tax in New York. The commissioner of taxation determined that all of relator's income was subject to Minnesota income tax; that the entire income received by the partnership constituted income from personal services, and relator's distributable share thereof constituted income from a business consisting principally of the performance of personal or professional services. This order was affirmed by the board of tax appeals and is brought here for review. The question here is whether the statutes of this state impose a tax not only on all the income produced by partnership activities carried on in this state, but also, because the taxpayer happens to reside here, on income produced by partnership activities carried on in other states.

Each partner was entitled to contribute to the capital of the partnership a proportion of the total capital equal to his proportionate participation in the distributable profits. Relator had 8/89 units of participation in the distributable profits, so he was entitled to and did contribute $20,000 to capital. Each partner who contributed to capital was entitled to receive five percent on that investment. The amount of stated capital of the partnership was

$222,500, of which $186,000 had been paid in. Several of the partners had theretofore not completed their capital contributions. Partners who had fully paid in their stated capital could make loans to the firm and receive interest on such loans. Relator filed an income return for the state of New York, in compliance with its laws, for the year 1939 for that part of his gross income which represented his share of the earnings of the New York office.

The furniture and equipment in the Minneapolis office belonged to the New York firm. The Minneapolis office deals directly with clients for whom work is done and determines what bills to render its clients. Employes attached to that office are hired and fired therefrom. It has no authority over the employes of other offices. All of relator's services are performed for and in behalf of the Minneapolis office. That is also true with respect to the other partner in the Minneapolis office and to the employes of that office.

Where work is to be done at several locations for clients whose business extends into several states, such as the Greyhound Lines, help is drawn on from other offices, and these other offices receive credit for their contribution to that job. That credit is computed by the number of hours worked by each of the assistants at an hourly rate, and is valued according to the classification of such worker. If two offices do a job together, the fee goes to both of them in proportion to the contribution made by each.

Five administrative partners are charged with handling currently the conduct and the policy of the business as it arises. Four of these administrative partners live in New York and one in Chicago. All the partners meet together once a year.

The activities of the partnership are limited exclusively to the practice of accounting and auditing. Each of the partners devotes his entire time to the practice of accounting and auditing in behalf of the partnership. The income of the partnership is derived in its entirety from the carrying on of a business consisting principally of the performance of personal or professional services. The partnership is definitely carrying on a business, and its business consists of providing "personal or professional services."

The account of the Minneapolis office shows a loss for the year of $665.27. If that office should show a net profit, such amount would be turned over in full to the New York office.

The statute involved is § 23(a) of L. 1933, c. 405, the state income tax act (Minn. St. 1941, § 290.17 [Mason St. 1940 Supp. § 2394-23]), which provides:

"Items of gross income shall be assigned to this state or other states or countries in accordance with the following principles:

"(a) *The entire income of all resident or domestic taxpayers* from compensation for labor or personal services, or *from a business consisting principally of the performance of personal or professional services, shall be assigned to this state,* and the income of non-resident taxpayers from such sources shall be assigned to this state if, and to the extent that, the labor or services are performed within it; all other income from such sources shall be treated as income from sources without this state." (Italics supplied.)

The language of the statute is plain. We cannot see how any interpretative regulations can make it any plainer. It needs no interpretation or clarification. Applying the facts of this case to the plain words of the statute, we find that our instant situation is fully covered. Here, the taxpayer is a resident of the state. The firm of Touche, Niven & Company is a partnership carrying on a business consisting not just principally, but entirely, of the performance of personal or professional services. Taxpayer is a member of that partnership. His entire income has its source in that firm and flows from the business of that partnership. The statute plainly states that the entire income of a resident taxpayer of this state derived from such a source shall be assigned to this state. An accounting business, a law firm, a medical or dental clinic, or an architectural or engineering firm each falls clearly within the group of businesses which are engaged in the rendering of personal or professional services. Relator's distributable share was a distribution of income to him from a business consisting principally of the performance of personal or professional services. Net in-

come is determined only by treating the partnership as an entity, and the tax is based upon the partner's distributable share of the partnership's net income.

Relator claims that certain regulations promulgated by the commissioner of taxation (Art. 23-1, 1939 Income Tax Regulations[3]) are applicable and that under such regulations he is not taxable in Minnesota on the distributable share of the profits of the partnership except to the extent that they may result from the operations of the Minneapolis office. As has been stated, the words of the statute itself are plain and their meaning obvious and rational. If relator's position be sustained, the interpretative regulation would in effect repeal the statute. Obviously, no authorities need be cited to support the proposition that such regulations will not be permitted to nullify the plain provisions of a statute. We see no necessity, therefore, to consider whether or not capital or the labor of others is a material income-producing factor. The commissioner's regulation cannot be made applicable to the instant situation.

Professor Rottschaefer, in an article in 18 Minn. L. Rev. 93, at p. 153, discussing this question, said:

"The principles assigning gross income items to this state can be easily stated by classifying them on the basis of the kind of income involved. The first of these is income derived by a resident or domestic corporation from personal services, or from a business consisting principally of the performance of personal or professional services. This is treated as Minnesota income regardless of where the services may have been performed."

The decision of the board of tax appeals is affirmed, and the writ of *certiorari* is discharged.

---

[3]"Income from personal services, as the term is used in Section 23, means income received from the performance of physical or mental labor, where the capital or the labor of others employed in the enterprise is not a material income-producing factor but is merely an incident to rendering such service."