ARTHUR N. BOLIER v. COMMISSIONER OF TAXATION.[1]

January 26, 1951.

No. 35,242.

[1]Reported in 45 N. W. (2d) 802.

*J. A. A. Burnquist,* Attorney General, and *Joseph S. Abdnor,* Special Assistant Attorney General, for relator.

*Frank J. Collins* and *E. E. Ranta,* for respondent.

CHRISTIANSON, JUSTICE.

Certiorari to review an order of the board of tax appeals reversing an order of the commissioner of taxation.

Respondent, Arthur N. Bolier, is a resident of this state and since 1942 has been engaged primarily in the road-contracting business. On June 9, 1942, he entered into a negotiated contract with the federal government for the construction of a portion of the Alaska-Canada highway between Fort St. John, British Columbia, and Fort Nelson, British Columbia. Under the terms of the contract, respondent was to furnish labor, materials, tools, machinery, equipment, facilities, supplies not furnished by the government, and services, and to do all things necessary for the completion of the portion of the Alaska-Canada highway covered by the contract. It was a cost-plus contract, respondent to receive a fixed fee of $31,500, which constituted complete compensation for his services, including his profit and all general overhead expenses. In addition, the contract provided that respondent was to receive reimbursement for his expenses and rental for his equipment on the basis of 25 percent of its cost per year. Prior to the time of signing the contract, respondent owned or had control of 12 or 13 pieces of heavy road-building equipment. He also acquired or rented some 90 additional pieces of equipment for use during performance of the contract. In turn, he rented this equipment to the government, paying the owners of the equipment he rented the amount of rent he received from the government for it. By the terms of the contract, title to all materials, tools, machinery, equipment, and supplies for which reimbursement was provided under

the contract vested in the government upon delivery at the site of the work. The contract did not specify or require any services of respondent himself. However, he was required at all times to keep a duly appointed and qualified representative on the job to receive and execute on his part such notices, directions, and instructions as the government engineers might give. The contract made provision for the subcontracting of any portion of the work with the government's approval. Respondent himself spent a total of 97 days on the job. The work started in July 1942 and was not completed until September 1943. All directions for the work came from the managing contractors or the government engineers. It was up to respondent or his superintendent to see that his crew performed the work as directed. All labor hired for the job was hired pursuant to the terms of the contract making provisions for the wage scale, overtime work, workmen's compensation, hospitalization and medical insurance, physical condition of the men, safety requirements, and race discrimination. Respondent had power to fire and hire any of his own employes. The work under his supervision was intermingled with the work of other contractors. The government reimbursed respondent for almost every expenditure of the work except interest paid on capital employed or money borrowed, the salary of respondent's representative on the job, and all general overhead expenses. The estimated cost of respondent's part of the project was $600,000. The government reserved the right to terminate the contract at any time. The contract was the standard form of fixed-fee contract for American contractors used by the federal government for the Alaska-Canada project. Respondent acquired additional equipment as the work progressed, so that he owned a total of 35 pieces of road-building equipment when his contract was completed.

Respondent filed with the commissioner of taxation his individual income tax return for the year 1943 on March 15, 1944. He included therein the income he had received under the aforesaid cost-plus contract with the federal government and paid the Minnesota

income tax thereon. On June 7, 1944, respondent filed a claim for refund of the amount of the tax so paid on the basis that such income was earned from conducting a contracting business wholly without the state of Minnesota. The commissioner of taxation, on the basis of the information submitted with the claim, allowed the refund, with the provision that his determination was subject to further audit. Upon further audit, the commissioner determined that 50 percent of the fixed fee respondent received from the federal government was assignable to this state under M. S. A. 290.17(1) and made and filed his order assessing a tax thereon. This order, which was reversed by the board of tax appeals, is brought here for review.

The sole question presented is whether income in the form of a fixed fee received by a Minnesota resident under a cost-plus contract with the federal government for the construction of roads outside of this state is taxable under § 290.17(1) or exempt under § 290.17(3).

Section 290.17 is determinative of the question presented here.[2] It provides as follows:

"Items of gross income shall be assigned to this state or other states or countries in accordance with the following principles:

"(1) *The entire income of all resident or domestic taxpayers* from compensation for labor or personal services, or *from a business consisting principally of the performance of personal or professional services, shall be assigned to this state,* and the income of non-resident taxpayers from such sources shall be assigned to this state if, and to the extent that, the labor or services are performed within

---

[2]It is well settled that a state may constitutionally tax a resident or a domestic corporation on income derived from sources outside of the state or may exempt such income from tax in the absence of unreasonable discrimination. Lawrence v. State Tax Comm. 286 U. S. 276, 52 S. Ct. 556, 76 L. ed. 1102, 87 A. L. R. 374; see, Annotations, 87 A. L. R. 380 and 130 A. L. R. 1183, 1186; 27 Am. Jur., Income Taxes, § 185.

it; all other income from such sources shall be treated as income from sources without this state;

*  *  *  *  *

"(3) *Income derived from carrying on a trade or business, including in the case of a business owned by natural persons the income imputable to the owner for his services and the use of his property therein, shall be assigned* to this state if the trade or business is conducted wholly within this state, and *to other states if conducted wholly without this state.* This provision shall not apply to business income subject to the provisions of clause (1) ;" (Italics supplied.)

The foregoing provisions were included in our income tax law when it was originally enacted in 1933 and have remained the same ever since.[3]

It is relator's position that the fixed fee which respondent received from the federal government was taxable either as "compensation for labor or personal services" or income "from a business consisting principally of the performance of personal or professional services" under § 290.17(1). In support of his contention, relator points out that respondent had no real authority over the work; that he was required to take his equipment and do the work at such time and place as designated by the government; that the capital for the work was furnished largely by the federal government; and that the risks respondent assumed under the contract were negligible.

The board of tax appeals held that respondent's income from the contract was neither compensation for labor or personal services nor from a business consisting principally of the performance of personal or professional services, but was income derived from a nonpersonal-service business conducted wholly without this state and therefore exempt from Minnesota income tax under § 290.17(3).

The determinative question before us is whether the decision of the board of tax appeals is justified by the evidence and is in con-

---

[3]L. 1933, c. 405, § 23(a and c).

formity with the provisions of § 290.17. See, Stronge & Lightner Co. v. Commr. of Taxation, 228 Minn. 182, 36 N. W. (2d) 800.

Relator concedes that respondent did not engage in any road construction work in Minnesota in 1943 and that his only taxable income for that year was from his operations in Canada under his contract with the federal government. Relator seeks to have taxed the sum of $11,651.58, representing 50 percent of the fixed fee respondent received in 1943 pursuant to the contract. The basis for relator's determination that only 50 percent of the fee was assignable to this state as income from personal services does not appear from the record. However, it does appear that rental for equipment is not included as part of the income sought to be taxed here.

■ Respondent himself spent a total of only 97 days at the project, including traveltime. All he did while there was to see that his reimbursements were coming through; that his own business affairs were taken care of; and that contact was maintained with the government's representatives with reference to the progress of the work. During his absence his superintendent took care of these matters on his behalf. The contract itself clearly shows that the federal government was not contracting for respondent's time, effort, skill, or advice. It contracted for a result, namely, the construction of a portion of the Alaska-Canada highway. The record discloses that the government had its own engineers and supervisors on the project and that respondent was not expected to render any services for the government other than to see that his obligations under the contract were carried out. Respondent was not an engineer himself, and the only apparent reason he was awarded the contract was because he was a road contractor, and because he owned and could acquire road-building equipment and could provide local labor for the Canadian project. Relator's argument in support of his contention that the fixed fee was compensation for respondent's personal services loses its force when consideration is given to the fact that a Minnesota corporation rather than a sole trader such as respondent could have been the contractor and taxpayer here. When the contract is considered in that light, its

personal-service aspects suddenly disappear. We find nothing in the record to support relator's contention that the income sought to be taxed here represented compensation for labor performed or personal services rendered by respondent personally.

■ The only question remaining is whether the board of tax appeals was justified in its conclusion that respondent's fee was not income "from a business consisting *principally* of the performance of personal or professional services" (italics supplied) under the provisions of § 290.17(1) and therefore was not income assignable to this state. Our income tax law contains no definition of what constitutes a personal-service business. However, in Bechert v. Commr. of Taxation, 221 Minn. 65, 21 N. W. (2d) 101, this court, in holding that all the income received by a resident partner from an accounting firm engaged in a nationwide accounting practice was taxable under § 290.17(1), stated (221 Minn. 68, 21 N. W. [2d] 103) :

"* * * The statute plainly states that the entire income of a resident taxpayer of this state derived from such a source shall be assigned to this state. An accounting business, a law firm, a medical or dental clinic, or an architectural or engineering firm each falls clearly within the group of businesses which are engaged in the rendering of personal or professional services. Relator's distributable share was a distribution of income to him from a business consisting principally of the performance of personal or professional services."

Conceding, as we do, that there are businesses other than those mentioned in the Bechert case which are engaged in the performance of personal or professional services, the road-construction business, in our opinion, is not one of them. Cf. Oklahoma Tax Comm. v. Benham, 198 Okl. 384, 179 P. (2d) 123.

The commissioner of taxation conceded in Duluth-Superior Dredging Co. v. Commr. of Taxation, 217 Minn. 346, 14 N. W. (2d) 439, that income received by a domestic corporation from a dredging contract it had performed outside this state was not taxable

under the principles for assignment of income set forth in § 290.17. Likewise, in the instant case, the commissioner apparently concedes that if respondent had secured a road-construction contract outside this state on a competitive-bid basis and had made a substantial profit from the performance thereof there would be no question under § 290.17 that the income therefrom would not be assignable to this state. The distinction claimed between that and the instant case is that here the income was from a cost-plus, fixed-fee contract. In our opinion, this is a distinction without a difference, for the reason that § 290.17 recognizes no distinction between business income resulting from a cost-plus contract as distinguished from any other form of business contract. Moreover, under § 290.17(1), it is not material whether the employment of labor or capital is a material income-producing factor in determining what is a personal or professional service business. Bechert v. Commr. of Taxation, *supra*. The sole test set forth by the legislature is the character of the business performed. The determinative question under § 290.17(1) is whether the particular business was engaged primarily in business activities which are generally recognized and accepted as rendering services of a personal or professional character. If so, the entire income therefrom is assignable to this state. If it is not such a business, then it falls within the provisions of either § 290.17(3) or § 290.17(4), and the income derived therefrom is assignable or allocable, as the case may be, in accordance with the provisions thereof.[4] The statutory language is plain and unambiguous. There is no room for construction.

[4]Section 290.17(4) provides:

"When a trade or business is carried on partly within and partly without this state, the entire income derived from such trade or business, including income from intangible property employed in such business and including, in the case of a business owned by natural persons, the income imputable to the owner for his services and the use of his property therein, shall be governed, except as otherwise provided in sections 290.35 and 290.36, by the provisions of section 290.19, notwithstanding any provisions of this section to the contrary. This shall not apply to business income subject to the provisions of clause (1)."

As this court stated in Hughes v. Spaeth, 207 Minn. 577, 578, 292 N. W. 194, 195, with reference to § 290.17: "The law seeks to tax on a realistic basis, and the most practical method is to treat the employment the same as the contracting parties do." There, it was held that income received by a nonresident employe while on vacation outside the state from a local employer was taxable under § 290.19(1). Here, it appears from the written contract and the other evidence in the record that the income in question was derived from a nonpersonal-service business and that it falls within the provisions of § 290.17(3).

Since it is conceded that respondent's contracting business was conducted wholly outside this state in 1943, it follows that none of the income therefrom was assignable to this state for that year. The decision of the board of tax appeals is affirmed, and the writ of certiorari is discharged.

Affirmed.