WHITNEY, Executrix, Appellant, v. DEPARTMENT OF TAXATION, Respondent.

*March 6—April 3, 1962.*

For the appellant there was a brief by *Kaumheimer, Alt & Likert,* attorneys, and *Paul V. Lucke* of counsel, all of Milwaukee, and oral argument by *Mr. Lucke.*

For the respondent the cause was argued by *Harold H. Persons,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

GORDON, J.   The appellant's position may be expressed as follows: Mr. Whitney, although a resident of Wisconsin and a licensed engineer, should not be taxed in Wisconsin on that portion of his income which was not derived from his personal services but which represented earnings from a business having a situs outside of Wisconsin; that it was income from a *business* is evidenced by the fact that the firm employed a large staff, utilized a significant capital account and required less than 10 percent of Mr. Whitney's time in professional engineering.

The respondent challenges the claim that this is a business and insists that Ammann & Whitney was really just an unusually large professional partnership. Whether or not Mr. Whitney's earnings were derived from his personal services is immaterial, argues the Tax Department, since the statutes require the taxing of income from a resident's profession regardless whether it stems from his personal services.

Two questions are presented for our determination. The first is one of statutory construction; we must resolve whether the statute intended to designate income from a profession as a specific and independent taxable source or, on the contrary, only as an example of personal services. The second question is whether on the facts of this case a portion of Mr. Whitney's income was derived from a "business" as opposed to a "profession."

Secs. 71.07 (1) and 71.07 (2), Stats. 1955, provide as follows:

"71.07 SITUS OF INCOME; ALLOCATION AND APPORTIONMENT. (1) For the purposes of taxation income from business, not requiring apportionment under sub. (2), (3), or (5), shall follow the situs of the business from which derived. Income derived from rentals and royalties from real estate or tangible personal property, or from the operation of any farm, mine, or quarry, or from the sale of real property or tangible personal property shall follow the situs of the property from which derived. *All other income, including royalties from patents, income derived from personal services, professions,* and vocations and from land contracts, mortgages, stocks, bonds, and securities or from the sale of similar intangible personal property, *shall follow the residence of the recipient,* except as provided in sec. 71.08. [Emphasis supplied.]

"(2) Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state . . ."

The 1953 statutes are also involved in this appeal, but it is conceded that any differences between the 1955 and 1953 statutes are not germane to the issues before the court. The changes subsequent to those years are not before the court. Ch. 348, Laws of 1961.

In our opinion, a fair interpretation of sec. 71.07 (1), Stats., as it was worded in the 1953 and 1955 statutes requires the conclusion that all income from a profession follows the residence of the recipient whether or not it is derived from personal services.

This conclusion wholly distinguishes the case at bar from that arising under the Oklahoma statute. *Oklahoma Tax Comm. v. Benham* (1947), 198 Okla. 384, 179 Pac. (2d) 123. Under the Oklahoma statute, a resident is taxed upon his income from personal services; professional earnings are one of the several examples of personal-service income given in the Oklahoma statute. In Wisconsin during 1953–1955, the statute treated professional earnings as a separate subject for taxation, independent of personal services. The distinction is a narrow one, but it is a significant one which the court may not ignore.

What is taxed and who is taxed are determined by the legislature's pronouncements. *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 207, 60 N. W. (2d) 763; *Milwaukee County v. Dorsen* (1932), 208 Wis. 637, 242 N. W. 515. The language of the Wisconsin statutes in 1953 and 1955 clearly imposes a tax on a Wisconsin resident for income derived from his profession as well as from his personal services.

In view of our conclusion that professional income is taxable without reference to whether it is derived from personal services, we are not called upon to decide whether the nature of the firm's transactions would have required the classification of all his income as being derived from personal

services. This was the concern of such cases as *Wiik v. Department of Taxation* (1946), 249 Wis. 325, 24 N. W. (2d) 685, and *State ex rel. Lerner v. Tax Comm.* (1933), 213 Wis. 267, 251 N. W. 456. Thus, even though some of the income received by Mr. Whitney may not have been derived from his personal services, it would be subject to the Wisconsin income tax if it constituted income from a profession.

This necessitates our determination whether Mr. Whitney derived his income from a profession or a business. There is no doubt that Ammann & Whitney was an immense operation. In addition to its offices in the United States, it had offices in Athens, Greece, and Paris, France. In 1955 its average payroll was $136,000 per month, and it had over $300,000 in bank accounts during three of the years in question. If size alone could transform a profession into a business, Ammann & Whitney would surely be the latter.

An examination of the record persuades us that this was a profession rather than a business, as the terms are employed in sec. 71.07, Stats. Ammann & Whitney were consulting engineers who practiced their profession on a broad international scale. They were not general contractors. Mr. Whitney testified that the firm supervised and inspected construction but did not do any actual construction.

The large number of employees, the magnitude of the payroll, and the presence of a substantial capital account are only the normal concomitants of conducting a large professional firm. As the trial judge put it:

"This 'capital' was used to advance work for clients, which labor was billed to and paid by them. It was used to purchase firm equipment and pay salaries. It was used to pay taxes and insurance. These are usual and customary expenses of professional firms. The fact that such investment was large proves the firm was large; it in no way derogates from the essential character of the firm."

The employment of labor and the use of capital were held to be of little significance in determining the taxability of a professional firm under the Minnesota tax statutes. *Bolier v. Commissioner of Taxation* (1951), 233 Minn. 72, 45 N. W. (2d) 802; *Bechert v. Commissioner of Taxation* (1945), 221 Minn. 65, 21 N. W. (2d) 101. However, there are differences between the relevant Wisconsin statutes and those discussed in the Minnesota cases, and our resolution of the case at bar cannot rest on the Minnesota decisions.

It has been noted that part of Mr. Whitney's income from Ammann & Whitney has been already taxed in the state of New York. However, the appellant has properly refrained from relying on double taxation as a basis for reversal. *Stocke v. Department of Taxation* (1946), 249 Wis. 408, 25 N. W. (2d) 65.

We conclude that Mr. Whitney's income from the firm of Ammann & Whitney was derived from a profession and not from a business. The taxation of this income, therefore, follows the residence of Mr. Whitney under sec. 71.07 (1), Stats.

*By the Court.*—Judgment affirmed.