CHARLES W. SEXTON COMPANY v. ROLLAND F. HATFIELD, COMMISSIONER OF TAXATION.

116 N. W. (2d) 574.

July 6, 1962—No. 38,497.

*Walter F. Mondale,* Attorney General, and *Jerome J. Sicora,* Special Assistant Attorney General, for appellant.

*Comaford, Fassett, Clarkson & Lewis,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment entered in the district court by which the Charles W. Sexton Company, the plaintiff, was awarded a refund of income taxes for the years 1948, 1950, 1951, and 1952. The issue before us involves an interpretation of Minn. St. 290.02

and 290.17(1). The latter provision assigns to this state for taxation the entire income of resident taxpayers from compensation for the performance of "personal or professional services." The plaintiff, a Minnesota corporation, is engaged in business as a general insurance agency. Its income is derived from commissions, a substantial number of which are earned in the State of Oregon. The question is whether the statutes of this state impose a tax not only on all income produced by the plaintiff's corporate activities carried on in this state, but also, because the taxpayer happens to reside here, on income produced by corporate activities carried on in other states.

From the record it appears that the Charles W. Sexton Company maintains its principal office in the city of Minneapolis. It was organized under Minnesota law in 1894 and ever since has existed as a Minnesota corporation. In addition to the office in Minnesota, the corporation has maintained a branch office in Portland, Oregon, since 1919. It also maintains an office in St. Paul, Minnesota, and for two of the years in question maintained an office in New York City.

For the calendar years 1948, 1950, 1951, and for the fiscal year ending October 31, 1952, the company filed returns of its income with the commissioner of taxation of the State of Minnesota. In these returns it employed the separate or segregated accounting method for determining income allocable to Minnesota. The commissioner, after auditing the plaintiff's returns, assigned all of its income to Minnesota and assessed a tax on that basis. He was of the view that all of plaintiff's income was derived from personal services within the meaning of § 290.17(1). The plaintiff paid the taxes and interest assessed and subsequently filed claims for refund of the taxes paid. After the claims were denied, this action was brought against the commissioner alleging among other things that the corporation was not engaged in the performance of personal services within the purview of § 290.17(1).[1] The district court awarded the plaintiff judgment for

---

[1]During the years in question our statutes provided no credit to taxpayers for taxes paid to other states on income earned there. Provision for such credit was later made by L. 1959, c. 10, applicable to taxable years beginning after December 31, 1957.

the amount of tax paid on its Oregon income, and this appeal followed.

The plaintiff corporation acts as agent for over 100 insurance companies selling fire, casualty, life, marine, and automobile insurance, and surety bonds. It is authorized by most, if not all, of these companies to act as agent in receiving and accepting proposals of contracts of insurance. Numbered blank policies are delivered to the corporation. These policies are entered in a register and are accounted for by the corporation. In the event that a numbered form is lost or unaccounted for, the corporation must furnish the insurance company with a lost policy certificate and agree to hold it harmless from any liability under that policy. The corporation is compensated on a commission basis for insurance sold. In all but life insurance sales, the corporation bills the customer, takes its commission, and remits the rest to the insurance company. The life insurance customer usually sends premiums directly to the insurance company.

The corporation reports monthly to each insurance company which it represents, indicating the amount of insurance written in that particular company, the amount of the premiums, and a calculation of commissions it is entitled to withhold. Each month it is required to remit premiums due to each insurance company whether or not the customer has paid the premium. In many instances the customer does not pay the premiums for 3 to 6 months after the business is written, but plaintiff must remit the premiums to the insurance company within 45 days after the end of the month in which the business was written. Plaintiff asserts that this necessitates that it maintain a large working capital, often in excess of $2,000,000.

Before the corporation writes the insurance for a customer it determines if the risk is insurable. This many times requires plaintiff's independent investigation. After the policy is written plaintiff forwards a copy of it and the premium less the commission to the insurance company, which then accepts the responsibility. Plaintiff maintains a record of all policies written and, upon their expiration, notifies the insured. The insurance companies do not provide this service.

Plaintiff's salesmen are all trained and are paid on a salary basis. The salesmen are called production employees. Plaintiff also maintains

two types of engineers. The safety engineers attempt to better conditions in order to prevent accidents and eliminate the sources of loss. Fire prevention engineers periodically inspect insured property to eliminate fire hazards. The insurance companies generally would perform this function if plaintiff did not. The plaintiff also employs clerical help to process the premium payments and policies. The production employees constitute only one-quarter of the total number.

The business of the Portland office is a completely independent operation. The manager of that office is in complete charge of the business, the hiring and firing of employees, and all financial transactions and recordkeeping for business handled there. All of its accounting records are kept separately from those of the Minnesota business and are reported to the Minneapolis office in condensed or synopsis form. The Portland office deals directly with the insurance companies in which it writes coverage.

The net income from the operation of the Portland office, which the commissioner seeks to again tax in Minnesota, was reported by the Portland office to the State of Oregon and the tax measured by such income paid to that state in the following amounts:

| Year | Taxable Net Income | Tax |
|------|--------------------|-----|
| 1948 | $174,676.60 | $13,823.12 |
| 1950 | 70,500.06 | 5,340.27 |
| 1951 | 46,375.87 | 3,381.82 |
| 1952 | 21,912.55 | 1,421.88 |
| | $313,465.08 | $23,967.09 |

In reporting income to each state under the separate accounting method, no credit was allowed by either state for the tax paid to the other.

■ Is the income earned by the corporation in Oregon taxable in Minnesota? The corporation is made subject to Minnesota income tax or excise tax by § 290.02, which provides:

"An annual excise tax is hereby imposed upon every domestic

corporation, except those included within section 290.03, for the privilege of existing as a corporation during any part of its taxable year, and upon every foreign corporation, except those included within section 290.03, for the grant to it of the privilege of transacting or for the actual transaction by it of any local business within this state during any part of its taxable year, in corporate or organized form.

"The tax so imposed shall be measured by such corporations' taxable net income for the taxable year for which the tax is imposed, and computed in the manner and at the rates provided in this chapter."

The defendant, commissioner of taxation for the State of Minnesota, contends that § 290.17(1) applies so as to make all of the plaintiff corporation's income subject to Minnesota excise tax.[2] This section provides:

---

[2]The parties have stipulated that Minnesota Income Tax Regulations, 1947, art. 17-1, applies to the instant case. This regulation states:

"The entire income of all resident or domestic taxpayers from compensation for labor or personal services, including income from a business consisting principally of the performance of personal or professional services, shall be assigned to this State. (For definition of 'resident' see Section 290.01, subd. 7 and Article 1-6.) The income of non-residents or taxpayer corporations from such sources shall be assigned to this State if, and to the extent that, the labor or services are performed within it. All other income from such sources shall be treated as income from sources without the state.

"All income derived from labor or personal services, professions or vocations by a resident or domestic taxpayer of Minnesota is taxable even though the service was actually performed, in whole or in part, outside of the state. Although an individual's residence and domicile are usually the same, this is not necessarily always the case. An individual may be residing during the entire taxable year without the state, but his domicile may still be within the state. A taxpayer whose domicile is the State of Minnesota must assign all income from labor or personal services, professions or vocations to the State of Minnesota. This is of course also true if he is a resident of this State. For example: (a) The salary of a resident of Minnesota for services performed in Wisconsin is assignable to this State; (b) An individual whose domicile is in this State may actually reside outside the state although not intending to give up his Minnesota domicile. Such an individual's income from personal services is assignable

"Items of gross income shall be assigned to this state or other states or countries in accordance with the following principles:

"(1) The entire income of all resident or domestic taxpayers from compensation for labor or personal services, or from a business consisting principally of the performance of personal or professional services, shall be assigned to this state, and the income of non-resident taxpayers from such sources shall be assigned to this state if, and to the extent that, the labor or services are performed within it; all other income from such sources shall be treated as income from sources without this state."

Section 290.17 has been considered by us on two previous occasions. In Bechert v. Commr. of Taxation, 221 Minn. 65, 21 N. W. (2d) 101, we considered the tax liability of an accountant on income derived from a nationwide accounting firm in which he was a partner. We there affirmed the Board of Tax Appeals, holding that a resident of Minnesota who was a member of the accounting firm must assign all of his share of the firm's income to Minnesota for income tax purposes, even though much of it was earned through partnership activities in states other than Minnesota. Although the taxpayer worked only in Minnesota, he was taxed on his share of the partnership income earned in other states. Under the circumstances of that case we held that the business of accounting involved the performance of personal or professional services. Each of the partners devoted his entire time

---

to this State; (c) Income derived from professional services by an attorney having a residence or domicile in Minnesota but practicing in Iowa, is assignable to this State.

"The income of a stock broker or of an investment or financial business is not derived from personal services in cases where stocks, bonds, or other property, whether tangible or intangible, constitute the stock in trade.

"Income from personal services, as the term is used in Section 290.17, means income received from the performance of physical or mental labor, where the capital or the labor of others employed in the enterprise is not a material income producing factor but is merely an incident to rendering such service. Salaries, wages, commissions and fees are considered to be derived from personal services."

The regulation in 1949 and 1951 was substantially the same as in 1947.

to the practice of accounting and auditing in behalf of the partnership. It was emphasized that the taxpayer was a member of the partnership and that his entire income was derived from the business of the partnership. We had little difficulty in determining liability because both the taxpayer's activities and the character of the service performed were in the nature of personal services. We there said (221 Minn. 68, 21 N. W. [2d] 103):

"* * * An accounting business, a law firm, a medical or dental clinic, or an architectural or engineering firm each falls clearly within the group of businesses which are engaged in the rendering of personal or professional services."

We next had occasion to consider the statute in Bolier v. Commr. of Taxation, 233 Minn. 72, 45 N. W. (2d) 802, where we held that the income of a Minnesota contractor derived from a cost-plus contract in the construction of a highway in Canada was not assignable to Minnesota as income received for labor or personal services or derived from a business consisting principally of personal or professional services within the income tax statute and that such income, therefore, was exempt.

We have not undertaken to define the term "personal or professional services" as used in § 290.17(1). We may assume that the legislature intended the statute to apply to wages or salaries earned by that portion of the resident population whose income in part or in whole is derived from out-of-state employment. It is also apparent that it was intended, as in the Bechert case, to reach income of Minnesota residents engaged in professional occupations earning part of their income in other states.

The Supreme Court of Wisconsin in State ex rel. Lerner v. Tax Comm. 213 Wis. 267, 271, 251 N. W. 456, 457, had no difficulty in applying the term to an individual engaged in procuring contracts for police officers' publications. The court said:

"* * * Comprehensively and exactly to define it [personal service] would be difficult if not impossible. We think it fairly clear that the legislature meant by 'all income derived from personal services' such income or gains as result from the performance of services or labor

without the material aid of capital. * * * 'Income derived from personal services' is substantially equivalent to 'income derived from personal earnings.' "[3]

The Supreme Court of South Carolina in Fennell v. South Carolina Tax Comm. 233 S. C. 43, 47, 103 S. E. (2d) 424, 426, in construing a similar statute, determined that the practice of dentistry was a personal service and went on to say:

"* * * Of course, business methods are ordinarily requisite to success in the practice of a profession; and office equipment, technical assistants, appliances, and bookkeeping are generally necessary to the successful practice of all the professions, including doctors, dentists, lawyers, engineers, architects, and others; but their income is derived from the rendition of personal services to their patients and clients. Therefore, respondent's out-of-state earnings as a dentist were not deductible from gross income, under the express terms of the statute."

It may be conceded that a local insurance agent who serves customers in his community is engaged in personal service within the meaning of § 290.17(1). The state argues that similarly the plaintiff is engaged in the insurance business and the fact that the scope of its business is much greater does not alter its character as a personal-service enterprise. The state would ignore the plaintiff's corporate character and the fact that the activities which produce the income are carried on by salaried employees. The plaintiff corporation argues that, unlike the insurance agent whose business is personal, both in the activity which produces it and the service which is rendered, it functions as an impersonal corporate organization and that the activity which produces the corporate income cannot be considered in the same sense as the activity of the individual which produces personal income. Obviously whether or not a taxpayer is engaged in personal or professional services must depend upon the particular facts and circumstances in each case.

In considering the character of plaintiff's business, it should be noted that it occupies an entire floor in a large office building in the

---

[3]See, also, Wiik v. Dept. of Taxation, 249 Wis. 325, 24 N. W. (2d) 685.

city of Minneapolis. It occupies one-half of an entire floor of an office building in the city of Portland, Oregon. During the 4 years in question it employed between 133 and 149 employees. The annual payroll varied from $591,000 to $610,000. Of its personnel, 25 to 30 percent were engaged in sales or production. The working capital of the corporation over the 4-year period varied from $1,753,000 to $2,040,000. These values included cash and current investments averaging approximately $793,000; accounts and notes receivable, approximately $1,010,000; and office equipment, approximately $37,000.

In construing the term "personal or professional services" as applied to the taxpayer's business, we are required to fall back on certain rules of construction. One well-recognized rule is that where the meaning of a taxing statute is doubtful, the doubt must be resolved in favor of the taxpayer. We are not permitted to extend the scope of a tax-levying statute beyond the clear meaning of the language used.[4]

■ Both parties refer to Federal authorities which deal with the subject of personal service corporations. These authorities have to do with the Revenue Act of 1918, § 200. "Personal service corporations" as defined by that section are exempt from the act. Matteson Co. v. Willcuts (D. Minn.) 12 F. (2d) 447. The state cites Hurst, Anthony & Watkins, Inc. v. Heiner (W. D. Pa.) 26 F. (2d) 734, 736, where the court said, "We do not know of any business where the personal service equation is more important than in the business of an insurance agent." The plaintiff taxpayer, on the other hand, urges that we adopt the definition of a personal service corporation found in the Revenue Act of 1918, § 200, which provides (40 Stat. 1059):

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal

---

[4]American Ry. Express Co. v. Holm, 169 Minn. 323, 211 N. W. 467; State ex rel. Inter-State Iron Co. v. Armson, 166 Minn. 230, 207 N. W. 727; State ex rel. Western Union Tel. Co. v. Minnesota Tax Comm. 132 Minn. 93, 155 N. W. 1061; Independent-Consol. School Dist. No. 27 v. Waldron, 241 Minn. 326, 63 N. W. (2d) 555; United States v. Merriam, 263 U. S. 179, 44 S. Ct. 69, 68 L. ed. 240, 29 A. L. R. 1547; Chicago, St. P. M. & O. Ry. Co. v. Kelm (D. Minn.) 104 F. Supp. 745.

owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; * * *."

The Federal authorities cited by the state[5] hold that personal service corporations may be exempt from the Federal income tax where capital is not a material income-producing factor and where the operation of the corporation closely approximates the activities of a partnership and its managers and directors function as copartners. Obviously we are not controlled by the Federal definition of the term "personal service corporation." The fact, however, that the application of that term to the Federal Revenue Act is not apposite to its use in state law does not prevent us from accepting the definition as expressing accepted meaning and usage, where to do so would not conflict with the provisions of the state law.

Moreover, the inherent meaning of the term "personal service" does not lend itself to an application of the type and character of the taxpayer's business.[6] When the legislature made provision for the assignment of income for "labor or personal services" without giving those terms a special or different meaning, the usual and ordinary definition of the terms may be considered. Webster's New International Dictionary (2 ed.) (1947) p. 1828, defines "personal" as:

"Of or pertaining to a particular person; affecting an individual, or each of many individuals; peculiar or proper to private concerns; not public or general; * * *. Done in person, without the intervention of another; direct from one person to another; * * *. Carried on between individuals directly."

"Service" is defined as (p. 2288):

---

[5]Hurst, Anthony & Watkins, Inc. v. Heiner (W. D. Pa.) 26 F. (2d) 734; Harry S. Kaufman, Ltd. v. Commr. of Int. Rev. (5 Cir.) 24 F. (2d) 44.

[6]It should be noted that the commissioner of taxation by Regulation 17-1 has determined that the brokerage business, which is analogous to that of the general insurance agent, is not a personal service within the purview of the act.

"The occupation, condition, or status of a servant, * * *. Performance of labor for the benefit of another, or at another's command; attendance of an inferior, hired helper, slave, etc. * * * The deed of one who serves; labor performed for another; duty done or required; office."

It seems to us that the personal service concept as used in our statute must apply to income derived from personal activities of those who share in the income. Where the personal service is rendered wholly by employees, or only by those who are slightly interested in the corporation, it does not seem to us that the personal service concept is appropriate. If, as in the Bechert case and the recent Wisconsin case of Whitney v. Wisconsin Dept. of Taxation, 16 Wis. (2d) 274, 114 N. W. (2d) 445, the income was received primarily from the activities of the individual taxpayer, we could agree that the concept would apply. In the case before us, however, it cannot be said that those who derive income from the operation of the business are devoting their time and energies or activities in a substantial measure so as to characterize the income as being derived from a personal service. From the record it appears that the taxpayer corporation is obviously an impersonal corporate entity and not one in which the stockholders and directors are directly engaged in the activities which produce the income of the corporation. This clearly appears from the record. The president testified:

"The Board of Directors in general make the broad policy under which we operate. I am given the powers to see that those policies are executed in our three offices. I transmit that information to Portland, St. Paul, and see that it is put into operation here in Minneapolis, and the Board of Directors' wishes are thereby carried out."

We are accordingly led to the conclusion that by use of the term "personal services" the legislature had in mind the application of that term to income of taxpayers who actively participate in producing the income upon which the tax must be paid. If the record had established that those who own and control the corporation conducted its operation in a manner analogous to that of a partnership, we could agree that the service was personal and the income assessable. On the contrary, however, the record establishes that the plaintiff corporation is

managed in the same way as any other large corporate business and cannot be characterized as a business consisting principally of the performance of personal or professional services.

Affirmed.