Seymour B. SCHONWETTER, et al., Relators,

v.

The COMMISSIONER OF REVENUE, Respondent.

No. 81–517.

Supreme Court of Minnesota.

Feb. 26, 1982.

William R. Busch, St. Paul, for relators.

Warren Spannaus, Atty. Gen., James W. Neher, Sp. Asst. Atty. Gen., St. Paul, for respondent.

AMDAHL, Chief Justice.

Taxpayers Seymour B. and Janice Schonwetter seek reversal of a decision of the Tax Court that that portion of their distributable shares of income from two Weight Watchers corporations allocable to out-of-state operations of those corporations is taxable in Minnesota as income from a business consisting principally of the performance of personal or professional services. The sole issue on appeal is whether the Tax Court erred in applying Minn.Stat. § 290.-17(1) (1976). We agree with taxpayers that our prior cases interpreting the statute compel reversal on these facts.

Schonwetters, husband and wife, are cash-basis taxpayers residing in Minneapolis. During the tax years in question—1973, 1974, 1975, and 1977—they were both officers of Weight Watchers of the Upper Midwest, Inc. (Upper Midwest), and Weight Watchers of Southern Minnesota, Inc. (Southern Minnesota), two electing small business corporations for federal and state tax purposes. Taxpayers are the sole owners of Upper Midwest, each owning 50% of the stock. They are majority shareholders in Southern Minnesota, each owning 27.5% of the stock. Their three children own the remainder of the shares. Both corporations are operated pursuant to an exclusive franchise granted by Weight Watchers International, Inc. (International). Upper Midwest operates in parts of Minnesota, the Dakotas, and Wisconsin; Southern Minnesota operates in parts of Minnesota and Wisconsin.

The business conducted by both corporations is the marketing of a weight loss and control program formulated entirely by International. Customers attend weekly sessions conducted by employees of the franchisees relating to diet, behavior modification, group interaction, and exercise. In order to operate the business, taxpayers underwent an in-depth training program

conducted by International. Under the terms of the franchises, International retained active and continuing control over (1) methods and procedures used in hiring, training, and supervising; (2) methods and materials used in advertising and public relations; (3) methods and materials used in disseminating the program; and (4) accounting methods. International furnished a training manual for supervisors' use in training lecturers, a handbook for lecturers' use in teaching the program, evaluation forms, advertising and promotional materials and the booklets, recipes, and other material handed out to customers at each session.

During the years in question Upper Midwest maintained a high of 112 separate class locations in August 1975 and a low of 37 locations in December 1972. Southern Minnesota maintained a high of 40 locations in May 1974 and 1975 and a low of 20 in September 1972. Upper Midwest conducted in excess of 4,200 sessions in fiscal 1973, more than 6,600 in fiscal 1974, and more than 7,300 in each of 1975 and 1977. Southern Minnesota conducted in excess of 2,100 sessions in fiscal 1973, more than 2,900 in fiscal 1974, and more than 3,000 in each of 1975 and 1977. Each class was staffed by a lecturer as well as, depending on the number of customers, one or more clerks and one or more weighers. It was the lecturer's obligation to hire, train, and supervise clerks and weighers as well as to locate and to rent the meeting place. Upper Midwest employed a low of 256 persons in the first quarter of 1973 and a high of 719 persons in the third quarter of 1975. Southern Minnesota employed a low of 146 persons in the first quarter of 1973 and a high of 259 persons in the third quarter of 1975. In addition to lecturers, clerks, and weighers, there was a central office servicing arrangement with Weight Watchers of Twin Cities, Inc., also owned by taxpayers. The central office staff consisted of two employees who worked on advertising and public relations, three to five field supervisors, two shipping clerks, three to six clerical workers, an office manager, a receptionist, and an executive secretary. The field supervi-

sors recruited, trained, and evaluated lecturers. A chief supervisor oversaw the work of the others and reported to taxpayer Janice Schonwetter.

Taxpayers divided their time between their three Weight Watchers corporations. During the years in issue taxpayer Seymour Schonwetter's work duties concerning Upper Midwest and Southern Minnesota were 85% administrative. He collected funds, handled accounts payable and payroll, made purchases, oversaw shipment of materials to lecturers, and prepared and filed various corporate reports and tax returns. Taxpayer Janice Schonwetter's work duties concerning Upper Midwest and Southern Minnesota were 80% directed toward reviewing and integrating new weight control information issued by International. She and her husband spent their remaining worktime reviewing advertising and promotional material and attending seminars. At no time during any of the tax years here involved did either Seymour or Janice Schonwetter serve as a lecturer or staff member. A maximum of 10 times per year Janice Schonwetter appeared at a meeting to present an achievement pin to someone who had lost much weight or to cross-check an evaluation. Janice Schonwetter's supervisory work was done almost exclusively from the central office. She actually visited only 1 or 2% of the class locations. Taxpayers received regular salaries from their corporations.

For each of the tax years in question, taxpayers allocated only part of their income to Minnesota using the formula stated in Minn.Stat. § 290.19 (1980) for businesses carried on partly within and partly without the state. The commissioner determined that apportionment was improper on the ground that the entire income was derived from a business consisting principally of the performance of personal or professional services and was, therefore, taxable under Minn.Stat. § 290.17(1) (1976). The Tax Court upheld the commissioner's decision and taxpayers obtained certiorari.

Minn.Stat. § 290.17(1) (1976) provides in part that "[t]he entire income of all resident

or domestic taxpayers from compensation for labor or personal services, or from a business consisting principally of the performance of personal or professional services, shall be assigned to this state * * *." We have applied this provision on several occasions. The first case, *Bechert v. Commissioner of Taxation*, 221 Minn. 65, 21 N.W.2d 101 (1945), involved a partner in a national accounting firm who claimed that profits distributed to him were taxable only to the extent that they were generated in Minnesota. We held that the distribution was taxable in full under the statute, reasoning that an accounting firm—like a law firm, a medical or dental clinic, or an architectural or engineering business—is clearly within the group of businesses engaged in personal or professional services. Because the taxpayer's distribution was from a business consisting principally of the performance of personal or professional services, taxation was appropriate. In reaching this decision we emphasized that although the Minneapolis office suffered a loss and taxpayer's distribution was, therefore, necessarily a result of profits in other locations, taxpayer spent his entire working time engaged in accounting activities.

The next case, *Bolier v. Commissioner of Taxation*, 233 Minn. 72, 45 N.W.2d 802 (1951), involved income received in the form of a fixed fee by a Minnesota resident under a cost-plus contract with the federal government for the construction of roads outside Minnesota. We concluded that the fixed fee was not compensation for any labor or personal services performed by the taxpayer because it was clear from both the contract and its performance that no time, effort, skill, or advice of the taxpayer had been agreed to or supplied. We also considered whether the road construction business is a personal or professional services business. Stating that the list of qualifying activities recited in *Bechert* is not exclusive, we nonetheless rejected the argument that road construction fell within the intended category.

A third case, *Charles W. Sexton Co. v. Hatfield*, 263 Minn. 187, 116 N.W.2d 574 (1962), involved a corporate taxpayer. The corporation was a large insurance agency with offices in Minnesota, Oregon and New York that sought to pay Minnesota excise tax only on sums generated in the Minnesota offices. The parties conceded that a local insurance agent is engaged in a personal service business and discussion focused on whether the taxpayer's corporate character made a different conclusion appropriate. We determined that the meaning of the term "personal service" did not lend itself to the taxpayer's business, stating:

It seems to us that the personal service concept as used in our statute must apply to income derived from personal activities of those who share in the income. Where the personal service is rendered wholly by employees, or only by those who are slightly interested in the corporation, it does not seem to us that the personal service concept is appropriate. If, as in the *Bechert* case and the recent Wisconsin case of *Whitney v. Wisconsin Dept. of Taxation*, 16 Wis.2d 274, 114 N.W.2d 445, the income was received primarily from the activities of the individual taxpayer, we could agree that the concept would apply. In the case before us, however, it cannot be said that those who derive income from the operation of the business are devoting their time and energies or activities in a substantial measure so as to characterize the income as being derived from a personal service. From the record it appears that the taxpayer corporation is obviously an impersonal corporate entity and not one in which the stockholders and directors are directly engaged in the activities which produce the income of the corporation.

263 Minn. at 197, 116 N.W.2d at 581.

The most recent case, *Ness v. Commissioner of Taxation*, 270 N.W.2d 258 (Minn. 1978), involved the allowability of certain deductions taken by Minnesota individual taxpayers for losses sustained by an Arizona corporation of which the husband was the majority shareholder. We reviewed our earlier decisions and stated the following rule:

From the above decisions, two conditions must be met before a taxpayer's income can be deemed personal-or-professional-service income. First, the income-producing activity itself must be the rendition of personal or professional services; and, second, the taxpayer must personally render such services; it is not enough to employ others to render them.

270 N.W.2d at 263. Applying this test to the facts presented, we found neither condition satisfied. The income-producing activities-ownership and management of a shopping center and hotel—were primarily the furnishing of space, not a personal service. Moreover, Ness' activities, like those of the shareholders in *Sexton*, were directed toward managing the corporation, not toward producing income.

In this case the Tax Court acknowledged that the second condition in *Ness*, that the taxpayer personally render the services, was not met. The judge decided, however, that that condition is "not essential." He reasoned that Upper Midwest and Southern Minnesota are small business corporations whose business is personal service and who have elected to be taxed as partnerships. Taxpayers "constitute the motivating force underlying the production of the personal service income at issue" and "closely supervise the daily income-producing activities of the sub-S companies" by overseeing the financial affairs, planning advertising and public relations campaigns, implementing and supervising training, evaluating classroom personnel, and personally appearing in media advertising. Although these facts are undisputed, they do not establish taxpayers' personal rendition of the income-producing tasks. We cannot read our prior cases as holding that such rendition is "not essential." In *Bechert* the accountant worked fulltime performing accounting services. In *Sexton* performance of insurance services by salaried employees rather than owners was specifically stated as a basis for nontaxability. While we observed in *Sexton* that "[i]f the record had established that those who own and control the corporation conducted its operation in a manner analogous to that of a partnership,

we could agree that the service was personal," 263 Minn. at 197, 116 N.W.2d at 581, that statement does not, on these facts, mandate a result contrary to *Sexton*. Taxpayers' corporations are conducted like partnerships only insofar as they are electing small businesses for tax purposes. Neither taxpayer is directly engaged in delivering the services marketed by the corporations. Like the taxpayer in *Ness*, these taxpayers are engaged in running the corporation, not in producing income. The decision of the Tax Court is reversed.

Reversed.

KELLEY, J., took no part in the consideration or decision of this case.