Donald A. and Lynda HILLSTROM,
Relators,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. 47959.

Supreme Court of Minnesota.

July 7, 1978.

266

Donald A. Hillstrom, pro se.

Warren Spannaus, Atty. Gen., Paul R. Kempainen, Spec. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

Heard before PETERSON, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Certiorari to the Tax Court to review its decision of June 17, 1977, affirming an order of the commissioner of revenue, who disallowed appellants' deduction of out-of-state gambling winnings on the 1974 state tax return of appellant Donald A. Hillstrom. We affirm.

The facts were stipulated, and are set forth in the Tax Court's opinion as follows:

"1. Appellants, Donald A. and Lynda Hillstrom, were at all times during the taxable year 1974 domiciled in the State of Minnesota with their place of residence being 2914 Dorman Avenue South, Minneapolis, Minnesota 55406.

"2. Donald A. Hillstrom was, at all times during the taxable year 1974, employed as an attorney, licensed to practice law in Minnesota. At no time during 1974 was gambling the business of Donald A.

Hillstrom, nor was he employed in the business of gambling.

"3. Lynda C. Hillstrom was a housewife during the taxable year 1974 and at no time during 1974 was gambling her business nor was she employed in the business of gambling.

"4. Donald A. Hillstrom has never had clients in the State of South Dakota, has never practiced law in the State of South Dakota, and has never had employment in the State of South Dakota.

"5. On the weekend of September 13, 14 and 15, 1974, Donald A. Hillstrom was on vacation in the State of South Dakota. On September 15, 1974, Donald A. Hillstrom attended the dog races at the Southern Dakota Racing Club, Sodiac Park, North Sioux City, South Dakota. While at the track he placed a bet by buying a $3 ticket on what was entitled the 'Big Perfecta.' As a result of this bet he won $6,074.40, which was paid to him by check. The winnings were disposed of by taking a vacation to California and for other luxurious items.

"6. Donald A. Hillstrom, after deducting $2,070 representing gambling losses, declared a total of $4,004 of his gambling winnings as income on his 1974 federal income tax return and paid federal income tax on that amount.

"7. On his 1974 Minnesota income tax return, Donald A. Hillstrom deducted his [net] winnings, a total of $4,004, in arriving at his 1974 Minnesota gross income and consequently did not pay any Minnesota income tax on his [net] winnings.

"8. The Commissioner of Revenue, by his Order dated September 15, 1975, disallowed Donald A. Hillstrom's deduction of his [net] gambling winnings on his 1974 Minnesota state income tax return."

The Tax Court, in affirming the commissioner, held that the money appellant won was income derived "from intangible personal property" not employed in appellant's business, and thus was assignable to Minnesota under the terms of Minn.St.1976, § 290.17(2), or, in the alternative, Minn.St.

1976, § 290.17(5).[1] The Tax Court also held that the application of this statute to appellants' winnings did not deny appellants due process of law or violate the Commerce Clause of the United States Constitution.

The issue simply stated is whether income from out-of-state gambling is assignable to Minnesota.

This question involves three sub-issues: Application of the statute; due process problems which might result from the application of the statute; and possible arguments involving interstate commerce or the right to travel.

A. Application of the statute.

■ The Tax Court's application of the statute was correct. Appellants are domiciled here, and they are not in the business of gambling. The issue, then, is whether the "Big Perfecta" ticket represented "intangible personal property."

The United States Supreme Court has defined *intangibles,* generally, as " * * * legal relationships between persons [; intangibles] have no geographical location, [they] are so associated with the owner that they * * * are taxable at the place of his domicile where his person and the exercise of his property rights are subject to the control of the sovereign power." *Graves v. Schmidlapp,* 315 U.S. 657, 660, 62 S.Ct. 870, 873, 86 L.Ed. 1097, 1100 (1942). Other courts have construed the specific phrase *intangible personal property* to include assets such as:

—notes and bonds, even if secured by liens on property located outside the taxing state, *Genesee Corporation v. Owens,* 155 Fla. 502, 20 So.2d 654 (1945);

—the right to receive payments due under a real estate sales contract, *In re Plasterer's Estate,* 49 Wash.2d 339, 301 P.2d 539 (1956), and see also, *Dept. of Revenue v. GAC Properties, Inc.,* 324 So.2d 167 (Fla.Dist.Ct.App.1975); and

—the right to withdraw contributions to a retirement fund, *In re Endemann's Estate,* 201 Misc. 1077, 106 N.Y.S.2d 849 (1951).

All of these are rights, represented by tangible documents, to receive money under certain circumstances. The "Big Perfecta" ticket embodied this kind of right, contingent on the winning of a race or races by some dog or combination of dogs. When this contingency was satisfied, appellants received a check, which it is hard to characterize as anything other than "income * * from intangible personal property."

Thus the result reached by the Tax Court may be attributed to Minn.St. 290.17(2). Minn.St. 290.17(5) is really superfluous, except as an indication of the legislature's intent to pursue its taxing power to whatever limits are set by the constitution.

B. Due process.

Appellants' main argument is that allocation of income for tax purposes must be "fair," and that this principle precludes taxing appellants in Minnesota on income derived from a transaction which took place in South Dakota. Dictum from *Harris v. Commissioner of Revenue,* 257 N.W.2d 568, 570 (Minn.1977), is quoted: "* * * Minnesota has no power to tax income that is not earned within its borders."

1. The applicable language is to be found in Minn.St.1976, § 290.17: "Items of gross income shall be assigned to this state or other states or countries in accordance with the following principles:

* * * * * *

"(2) * * * *Income or gains from intangible personal property not employed in the business of the recipient of such income or gains,* and from intangible personal property employed in the business of such recipient if such business consists principally of the holding of such property and the collection of the income and gains therefrom, wherever held, whether in trust, or otherwise, *shall be assigned to this state if the recipient thereof is domiciled within this state*; income or gains from intangible personal property wherever held, whether in trust or otherwise shall be assigned to this state if the recipient of such income or gains is domiciled within this state, or if the grantor of any trust is domiciled within this state and such income or gains would be taxable to such grantor under sections 290.28 or 290.29;

* * * * * *

"(5) All other items of gross income shall be assigned to the taxpayer's domicile." (Italics supplied.)

The context of this statement might limit its application to the present case, however; in *Harris*, the taxpayer moved to Georgia during the tax year and began to earn income there. The court denied the taxpayer's claim that his moving expenses should be deductible in Minnesota, reasoning that these expenses were incurred for the purpose of enabling him to earn Georgia income which Minnesota could not tax. This is a case, in other words, admitting that Minnesota cannot tax income from labor wholly performed in Georgia by a Georgia resident. See, Minn.St. 290.17(1), which assigns income from labor or services of nonresident taxpayers to this state "if, and to the extent that, the labor or services are performed within it." [2] *Harris* should not be read broadly as denying the state's power to tax its domiciliaries on income from out-of-state sources; as the court stated in *Bolier v. Commissioner of Taxation*, 233 Minn. 72, 75, 45 N.W.2d 802, 804 (1951), "[i]t is well settled that a state may constitutionally tax a resident or a domestic corporation on income derived from sources outside of the state or may exempt such income from tax in the absence of unreasonable discrimination."

The view taken in *Bolier* is solidly based on two United States Supreme Court decisions, *New York ex rel. Cohn v. Graves*, 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 666 (1937), and *Lawrence v. State Tax Commission of Mississippi*, 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102 (1932). In *Cohn*, the court held that while a state cannot levy a property tax on out-of-state land, if a domiciliary of the taxing state receives rent from such land, that rent is subject to income tax. Similarly, the *Lawrence* court recognized that out-of-state *tangibles* could not be taxed, but concluded that "considerations applicable to the ownership of physical objects located outside the taxing jurisdiction, which have led to that conclusion, are obviously inapplicable to the taxation of intangibles at the place of domicile * * *." (286 U.S. 280, 52 S.Ct. 557, 76 L.Ed. 1105.)

True, as is stated in *Harris*, there must be "a sufficient nexus between the state and the income-producing activity." 257 N.W.2d 571. Where the "income producing activity" is the ownership of intangible personal property, it has been held repeatedly that the state where the taxpayer is domiciled has a sufficient nexus. There are often practical difficulties in determining the tax situs of intangible property; these are resolved by allowing the state of domicile, which has the primary responsibility for protecting the person, assets, and income of the taxpayer, to tax the income from intangibles. See, *Lawrence v. State Tax Commission of Mississippi*, 286 U.S. 276, 281, 52 S.Ct. 556, 557, 76 L.Ed. 1102, 1106 (1932); *Central Hanover Bank & Trust Co. v. Kelly*, 319 U.S. 94, 96, 63 S.Ct. 945, 947, 87 L.Ed. 1282, 1285 (1943); and *Cargill, Inc. v. Spaeth*, 215 Minn. 540, 10 N.W.2d 728 (1943). *Greenough v. Tax Assessors of Newport*, 331 U.S. 486, 492, 67 S.Ct. 1400, 1403, 91 L.Ed. 1621, 1627 (1947),—a property tax case—provides the answer to appellants' "fairness" argument:

"* * * A state is dependent upon its citizens for revenue. Wealth has long been accepted as a fair measure of a tax assessment. As a practical mode of collecting revenue, the states unrestricted by the federal Constitution have been accustomed to assess property taxes upon intangibles 'wherever actually held or deposited,' belonging to their citizens and regardless of the location of the debtor."

The same rationale applies to the policy of taxing income from intangibles.

C. Interstate commerce/right to travel.

In their memo to the trial court, appellants suggested that the application of Minn.St. 290.17(2) to their gambling winnings might be a prohibited interference with interstate commerce. They have not developed this issue on appeal, perhaps because such an argument has very little authority, if any, to support it. To the extent

---

2. Income from labor or services performed out of state by a Minnesota resident is taxable in Minnesota.

that this tax affects interstate commerce it would seem to be a permissible tax on income from interstate commerce, not an invalid direct tax on such commerce. See, *Northwestern Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959). Nor does it unduly favor local Minnesota Commerce. See, *Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653, 68 S.Ct. 1260, 92 L.Ed. 1633 (1948). The reverse would be true were the tax held invalid: Minnesota gamblers who gamble out-of-state would have a tax advantage over those who gamble at home. Nor is there any indication in the record that the tax imposed here creates a multiple burden "offensive to common concepts of what constitutes fairness." *Skelly Oil Co. v. Commissioner of Taxation*, 269 Minn. 351, 368, 131 N.W.2d 632, 643 (1964).

Similarly, while the right to travel is recognized in Minnesota as a "basic right" under the United States Constitution, what is involved here is not a tax on the right to travel, but a tax on income realized while travelling, which includes gambling winnings. See, *Davis v. Davis*, 297 Minn. 187, 210 N.W.2d 221 (1973), for a discussion of the importance of the right to travel. Cf. *Edwards v. California*, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941), holding unconstitutional a California statute prohibiting the transportation of indigent persons into California. Recent cases on the right to travel have concerned such issues as durational residency requirements for the right to vote or to receive welfare benefits. *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). It would require a considerable stretch of the imagination to read into these decisions any suggestion that income from intangible personal property acquired while travelling should be free from state taxation.

At oral argument, appellant most strenuously argued that the case of *Target Stores, Inc. v. Commissioner of Revenue*, 309 Minn. 267, 244 N.W.2d 143 (1976), is controlling and dictates a finding in his favor in this case. We disagree. The *Target* case dealt with tangible real estate purchased by the taxpayer in the state of Texas for the purpose of constructing a retail sales outlet. Some of the real estate not needed for the construction was sold at a profit. In holding Minnesota could not tax the profit, we found that the taxpayer was not engaged in the business of buying and selling real estate, and that the original purchase was made with funds advanced from Target's parent company and not with the taxpayer's current or retained earnings. The issue of whether the profits were from intangibles or taxable under Minn.St. 290.17(5) was not seriously argued.

The Tax Court is affirmed.