**FAIRBANKS NORTH STAR BOROUGH, a second class borough, and College Service Area Commission, Appellants,**

v.

**COLLEGE UTILITIES CORPORATION, a domestic corporation, and George Gordon, Appellees.**

Nos. 7849, 7858.

Supreme Court of Alaska.

Sept. 21, 1984.

Terrence H. Thorgaard, Asst. Borough Atty., J.D. Nordale, Borough Atty., Fairbanks, for appellants.

James M. Hackett, Fairbanks, for appellees.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

RABINOWITZ, Justice.

I.

In the spring of 1982, the Mayor of the Fairbanks North Star Borough (Borough or

FNSB) introduced an ordinance that, among other things, raised the rate at which real property in the College Service Area [1] was to be taxed.[2] In previous years the rate had been set at zero mills; the ordinance raised that rate to one mill.[3] Notice of the proposed ordinance was published in the Fairbanks Daily News-Miner, a daily newspaper of general circulation in the Fairbanks area, and the Borough Assembly subsequently enacted the ordinance.

George Gordon (Gordon), a property owner in the College Service Area, learned of the change in rates when he received a corporate[4] real property tax bill from the Borough in July 1982. Over the following five months, Gordon protested the rate increase to the Borough attorney, individual Borough assemblymen, and the chairman of the College Service Area Commission.[5] Failing to obtain administrative relief, Gordon sued the Borough in superior court, challenging the one-mill assessment and seeking a refund of the taxes he and other College Service Area property owners had paid under the new rate. The Borough moved to dismiss the complaint under Alaska R.Civ.P. 12(b)(6). Following extensive discovery, Gordon moved for summary judgment on liability. The superior court, after oral argument on the Borough's motion to dismiss, concluded "that the Borough gave inadequate notice to property owners" of the proposed millage rate change. The court granted Gordon's motion for summary judgment and ordered the Borough to refund the taxes collected under Ordinance No. 82–20–1A. The superior court further concluded that Gordon was a successful public interest litigant, and awarded him actual costs and attorney's fees. The Borough appeals from both the superior court's determination that notice was inadequate and its award of full attorney's fees. Gordon cross-appeals, challenging the superior court's conclusion that the one-mill rate increase was authorized by statute.

## II.

AS 29.48.150 prescribes the procedures for enacting ordinances:

The following procedure governs the enactment of all ordinances except emergency ordinances. An ordinance may be introduced by a member or committee of the assembly or council or by the municipal executive or chief administrator. An ordinance shall be set for hearing by the affirmative vote of a majority of the votes authorized on the question. A summary of the ordinance and its amendments is published together with a notice of time and place for public hearing. The hearing follows publication by at least five days. Copies of the ordinance must be available to all persons present or the ordinance must be read in full. The assembly or council shall hear all

---

1. The College Service Area is one of 57 service areas that the Borough has established pursuant to AS 29.63.090(a):

   Service areas to provide special services within a borough may be established, operated, altered or abolished by the assembly by ordinance. Special services include services not provided on an areawide basis within the borough or the borough area outside cities or a higher or different level of service than that provided on an areawide basis or in the borough area outside cities. In a first class borough the assembly may exercise within a service area any power granted a first class city by general law. Except as provided in (f) of this section, a second class borough may exercise the powers granted a first class city by general law but the exercise of the powers must be approved by a majority of the qualified voters residing within the service area

   and voting on the question at a regular or special election.

2. The text of the ordinance is set forth in the appendix to this opinion.

3. A "mill" is one-tenth of a cent.

4. Gordon is President of College Utilities Corporation (CUC), as well as a resident of the College Service Area. For convenience, we include the CUC in all subsequent references to Gordon.

5. Don Weldon was chairman of the College Service Area Commission in the spring of 1982. Weldon had proposed a one-mill increase in the property tax rate at a Commission meeting on May 11, 1982. A majority of the College Service Area residents present at that meeting had approved the rate increase.

interested persons wishing to be heard. After the hearing, the assembly or council shall consider the ordinance and may adopt it with or without amendment. The assembly or council shall print and make available copies of adopted ordinances.

It is undisputed that a summary of proposed Ordinance No. 82–20–1A was published five days before the public hearing. At issue in this case is the adequacy of that published summary.

Ordinance No. 82–20–1A is comprised of two sections. The first section appropriates funds for service area expenditures in fiscal year 1982–83, while the second section establishes rates of taxation for some of the service areas. Section one lists all fifty-seven service areas, setting out the total expenses and revenues for each one. Section two lists twenty service areas in which a property tax is to be levied. The College Service Area is listed in both sections.

Pursuant to its statutory duty under AS 29.48.150(a), the Borough Assembly published the following notice in the Fairbanks Daily News-Miner on May 22, 1982:

### NOTICE OF PUBLIC HEARING

Public hearing will be held by the Fairbanks North Star Borough Assembly at its regular meeting in the Borough Assembly Chambers of the Fairbanks North Star Borough Administrative Offices, 520 5th Avenue, Fairbanks, on May 27, 1982, at 8:00 p.m., on the following ordinances:

. . . .

ORDINANCE NO. 82–20–1A. An Ordinance Amending The FY 1982–83 Budget By Appropriating Funds For the Borough Service Areas And Fixing the Rate Of Real Property Tax Levy For These Service Areas For the 1982/83 Fiscal Year.

All citizens of the Fairbanks North Star Borough will have an opportunity to be heard. Copies of the ordinances are available at the office of the Borough Clerk, Fairbanks North Star Borough Administrative Offices, 520 5th Avenue, Fairbanks.

The question before us is whether this published summary of Ordinance No. 82–20–1A meets the requirements of AS 29.48.-150(a).[6]

The superior court, in concluding that the published summary was inadequate, focused primarily upon what it viewed as its vagueness:

Notice was published on May 22, 1982 and was very vague. The Fairbanks North Star Borough contains 57 service areas. Ordinance No. 82–20–1A affected twenty of those service areas. The public notice gave no indication of who or what Ordinance 82–20–1A would affect. A public hearing was held on May 27, 1982 and only a handful of people attended. On these facts the conclusion is inescapable that the Borough gave inadequate notice to property owners.

■ We conclude that the published summary of the ordinance complied with the mandate of AS 29.48.150. The text of the summary is not "vague"; the summary described clearly, if generally, what the proposed ordinance would accomplish.[7] According to Gordon, the summary should

6. Our prior decisions offer little guidance. In *Liberati v. Bristol Bay Borough*, 584 P.2d 1115 (Alaska 1978), a proposed ordinance imposed a 3% sales tax on all raw fish caught within the Bristol Bay Borough. The published summary described the ordinance as

providing for levy and collection of sales tax of three percent (3%) of the sales price on all fish and fish eggs which are harvested within the boundaries of the Bristol Bay Borough. *Id.* at 1118. Our opinion assumed that this summary was adequate. Here both parties seek support in *Liberati* for their respective positions.

The Borough emphasizes the incomplete content of the fish tax summary, while Gordon contrasts its specificity with the general summary of Ordinance No. 82–20–1A published by the Borough. In our view *Liberati* is not dispositive.

7. We recognize that the notice aspect of the summary was not perfect. It informed the reader that the proposed ordinance fixed the rate of real property taxes in "These Service Areas." In context, the term "these" seems to indicate "all", since it refers back to "the Borough Service Areas." In a sense, then, the no-

have specified that the proposed tax rate for the College Service Area was one mill, or at least that the proposed ordinance would increase the present mill rate. We cannot agree that the term "summary", as used in AS 29.48.150(a), requires that level of detail. Were we to require that the summary of the ordinance set forth the tax rate increase for the College Service Area, it would follow that any contemplated increase in the tax rate of other service areas would have to be specifically mentioned. We cannot countenance such a result. The Legislature decided to require publication only of a "summary" of each proposed ordinance, not publication of the ordinance itself. In this respect, AS 29.48.150 differs from the statutory publication requirements of other jurisdictions.[8] The published notice in this case adequately and accurately summarized the proposed ordinance. No greater level of detail was required.

Accordingly, we hold that the published summary of Ordinance No. 82–20–1A satisfied the requirements of AS 29.48.150(a).[9]

### III.

In his cross-appeal Gordon argues that the Borough is not authorized to use a

general property tax within a service area to fund road construction in that area.[10] The superior court held that a second class borough such as FNSB

> may levy (1) an areawide property tax for areawide functions, and (2) a property tax limited to the area outside cities for functions limited to the area outside cities. AS 29.53.010.... In order to levy a property tax the Borough Assembly must pass a general ordinance. Based on the foregoing, the Borough could legally impose a property tax limited to the area outside cities for functions limited to areas outside cities.

Gordon argues that the tax levied on College Service Area property by the challenged ordinance did not fall within either branch of AS 29.53.010. It is not an "areawide property tax," he says, because the "area" contemplated by that section is the entire Borough. Nor is it "a property tax limited to the area outside cities," he claims, because a single service area like the College Service Area does not constitute the "area outside cities" contemplated by AS 29.53.010.[11]

■ Gordon's construction of AS 29.53.-010 finds support in the statutory provision

tice could mislead the reader into thinking that the proposed ordinance would set property tax rates for more service areas than it actually affected. However, such a syntactical infirmity would not appreciably impair the intended function of the notice; if anything, more readers would expect to be affected by the ordinance as described, and their misconception as to its breadth would presumably motivate them to attend the hearing.

**8.** See generally 5 E. McQuillin, The Law of Municipal Corporations § 16.76 (3d ed. 1976).

**9.** See Garlen v. City of Glens Falls, 17 App.Div.2d 277, 234 N.Y.S.2d 564 (1962); Village of Larchmont v. Sutton, 30 Misc.2d 245, 217 N.Y.S.2d 929 (Sup.1961); Richardson v. City of Lockport, 2 Misc.2d 548, 153 N.Y.S.2d 946 (Sup.1956).

**10.** Gordon also attacks two of the superior court's findings of fact. First, the superior court found that the challenged ordinance "increased the mill rate for various services rendered in service areas ...." (Emphasis added). Gordon points out that the record is undisputed "that only CSA, among all fifty-seven service areas [in the Borough], had its 1982 mill rate

increased (under the Ordinance) over its maximum mill rate established at the time of formation ...." The record does not reveal whether any service area other than the College Service Area had its prior tax levy rate increased by Ordinance No. 82–20–1A. We agree with the Borough that any error that the superior court may have committed on this point was harmless. Alaska R.Civ.P. 61.

The superior court also stated that the rate increase was "for road maintenance for the College Service Area." (Emphasis added). Gordon insists that the money was earmarked for road improvements, more properly characterized as capital improvements than as maintenance. The Borough concedes that the superior court misstated this proposition, but argues that the error does not affect the outcome of the case. We agree. The superior court's misstatement was harmless error.

**11.** Gordon supports this construction of AS 29.-53.010 by referring to other provisions of Title 29. AS 29.78.010(18) defines "areawide power" as "a power of an organized borough exercised throughout the borough," while subsection (19) defines "nonareawide power" as "a power of an organized borough exercised by the borough

outlining the nature and purpose of service areas:

> AS 29.63.090. *Service Areas.* (a) Service areas to provide special services within a borough may be established, operated, altered or abolished by the assembly by ordinance. Special services include services not provided on an areawide basis within the borough or the borough area outside cities or a higher or different level of service than that provided on an areawide basis or in the borough area outside cities.[12]

The Borough does not challenge Gordon's construction of AS 29.53.010, and concedes that the superior court erroneously relied on that statute. However, the Borough finds authority for levying a service-area-wide tax in other statutory and constitutional provisions. Under AS 29.63.090(b),

> the assembly may levy or authorize the levying of taxes, charges, or assessments in service areas to finance the special services.

Article X, Section 5 of the Alaska Constitution contains essentially identical language.[13]

However, as the Borough acknowledges, a second class borough may only exercise within a service area such powers as are approved by a majority of qualified voters within that area voting at a regular or special election. AS 29.63.090(a). For the Borough to have properly levied the challenged tax here, its power to provide for road improvements in the College Service Area must have been previously approved.

■ Apparently, it was. FNSB 14.21.010 provides as follows:

A. There is established a service area within the borough designated the "College Service Area" . . . .

B. The College Service Area shall have *road construction and maintenance* powers.

(Emphasis added). When this ordinance was passed, the FNSB Code provided that service areas became effective upon voter approval, and that the proposition before the voters was to list all of the proposed services to be provided. Nothing before us suggests that the required election was not held. Thus we conclude that the Borough was authorized to exercise road construction powers in the College Service Area and, under AS 29.63.090(b), could properly levy taxes to finance such construction.[14]

■ Gordon's second, and related, argument on cross-appeal is that the Borough was required to use a special assessment, rather than a general property tax, to finance the proposed roadwork in the College Service Area. Gordon relies in part on a 1966 Attorney General's opinion to explain the difference between these two methods of raising revenues:

> Special assessments are levied for improvements which benefit particular individuals or property and are levied with reference to, and in proportion to, the special benefit conferred. General taxes, on the other hand, are imposed for the purpose of raising monies to be expended for governmental purposes without regard to special benefits conferred on a particular group or class of persons or property.

1966 Op.Att'y Gen. No. 10 (Alaska, July 28, 1966). Apparently, Gordon's implicit premise is that since only certain College Ser-

---

only in the area outside of cities." *See also* AS 29.48.210.

**12.** *See also* FNSB Code 14.01.181, which defines "service area" as "an area of the borough designated by ordinance within which the borough provides a governmental service not provided on either an areawide basis or in the area outside cities."

**13.** Article X, Section 5 of the Alaska Constitution provides in part: "The assembly may autho-

rize the levying of taxes, charges, or assessments within a service area to finance the special services."

**14.** In so holding, we note that Article X, section 1 of the Alaska Constitution prescribes that "A liberal construction shall be given to the powers of local government units." Accordingly, "[w]e should not be quick to imply limitations on the taxing authority of a municipality where none are expressed." *Liberati v. Bristol Bay Borough,* 584 P.2d 1115, 1121 (Alaska 1978).

vice Area property owners stood to gain from the proposed roadwork, a special assessment was required. He concludes that, since proper assessment procedures were not followed, the "tax" is void. The Borough responds that it was authorized by AS 29.63.090(b) to use either a tax or a special assessment to finance the road work, and it chose the former.[15]

We conclude that Gordon has not shown that a special assessment was required. Typical of special assessment cases is *Kissane v. City of Anchorage*, 17 Alaska 514, 159 F.Supp. 733 (1958), where a homeowner challenged a special assessment levied on neighborhood property owners to finance the construction of off-street parking. In order to calculate individual assessments, the plan assessed relative benefits by measuring how much of each person's property fell within delineated zones benefitting from the proposed parking lots. *Id.* at 735.

*See also City of Whittier v. Dixon*, 24 Cal.2d 664, 151 P.2d 5 (1944) (assessments for off-street parking upheld).

In the present case, the revenues raised were to be used to construct new paved roads and to repair existing paved roads. Nothing in the record suggests that only certain property owners in the College Service Area would benefit from new and improved roads, although it is likely that the level of benefit would vary with location. Absent a disproportionate benefit to a relatively small number of property owners, there is no need for the Borough to use special assessments, rather than property taxation, to finance approved special services in a service area.[16]

The judgment of the superior court is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.[17]

## APPENDIX

By:       John A. Carlson
Introduced:  05/13/82
Advanced:    05/13/82
Adopted:     05/27/82

ORDINANCE NO. 82-20-1A

AN ORDINANCE AMENDING THE FY 1982-83 BUDGET
BY APPROPRIATING FUNDS FOR THE BOROUGH SERVICE AREAS
AND FIXING THE RATE OF REAL PROPERTY TAX LEVY FOR
THESE SERVICE AREAS FOR THE 1982-83 FISCAL YEAR

Section 1. Special Revenue Funds - Service Area Appropriations.

The following appropriations are made for Special Revenue Funds - Service Area

Expenditures for the fiscal year beginning July 1, 1982, and ending June 30, 1983:

| ADMINISTRATIVE AUTHORITY | APPROPRIATION | | REVENUE SOURCE | | | |
|---|---|---|---|---|---|---|
| Service Area | Operating Expenses | Capital Outlay | Property Tax | State Shared Revenue | User Fees | Fund Balance |
| Air Park | 5,250 | | | 5,250 | | |
| Aztec | 9,192 | | 2,317 | 6,875 | | |

15. AS 29.63.090(b) provides:
  (b) The assembly may levy or authorize the levying of taxes, charges, or assessments in service areas to finance the special services.

16. Gordon also argues on cross-appeal that the Borough lacks authority to raise a service area's tax rate without first obtaining the approval of property owners in the service area. Gordon grounds this argument in certain unspecified "provisions and procedures" of the Borough, which were allegedly in force when the College Service Area was created in 1977, but have since been changed or eliminated. The Borough responds that Gordon did not preserve this issue on appeal, and that under *Whitson v. Anchorage*, 608 P.2d 759 (Alaska 1980), a borough's taxing power under AS 29.53.170 cannot be abridged by popular vote. Because Gordon failed to include this argument in his points on appeal as required by Appellate Rule 210(e), we decline to consider the issue. *Wetzler v. Wetzler*, 570 P.2d 741, 742 n. 2 (Alaska 1977).

17. In light of our disposition of the notice issue, we do not reach any other issue raised by the Borough in this appeal.

| ADMINISTRATIVE AUTHORITY | APPROPRIATION | | | REVENUE SOURCE | | |
|---|---|---|---|---|---|---|
| Service Area | Operating Expenses | Capital Outlay | Property Tax | State Shared Revenue | User Fees | Fund Balance |
| Alder Creek | -0- | -0- | -0- | -0- | -0- | -0- |
| Ballaine Lake | 2,253 | | 1,478 | 775 | | |
| Ballaine Lake (W/S) | 2,100 | | 7,388 | | | |
| Beacon Hill | 1,700 | | | 1,700 | | |
| Becker Ridge | 15,751 | 7,500 | | 23,251 | | |
| Birch Hill | 7,290 | | 1,090 | 6,200 | | |
| Brookside | 2,700 | | | 2,700 | | |
| Chena Spur | 9,500 | | | 9,500 | | |
| College | 42,225 | 100,578 | 100,578 | 42,225 | | |
| College Hills | 10,875 | | | 10,875 | | |
| Cripple Creek | 6,275 | | | 6,275 | | |
| Diane | 11,246 | | 827 | 4,050 | | 6,369 |
| Ester Lump | 12,500 | 2,000 | | 9,475 | | 5,025 |
| Ester Volunteer Fire | 32,406 | 14,014 | 16,900 | 9,520 | | 20,000 |
| Fairfield | 2,975 | | | 2,975 | | |
| Fairhill | 4,225 | | | 4,225 | | |
| Garden | 7,650 | | | 7,650 | | |
| Goldstream Alaska | 5,000 | | | 5,000 | | |
| Hopeless | 10,000 | | | 10,000 | | |
| Haystack | -0- | -0- | -0- | -0- | -0- | -0- |
| Horseshoe | -0- | -0- | -0- | -0- | -0- | -0- |
| Jennifer | 3,778 | | 1,903 | 1,875 | | |
| Jones Road | 4,550 | | | 4,550 | | |
| Keeney Road | 1,411 | | 1,411 | | | |
| Keystone | -0- | -0- | -0- | -0- | -0- | -0- |
| Kris Kringle | 3,114 | | 1,039 | 2,075 | | |
| Keeney Road | -0- | -0- | -0- | -0- | -0- | -0- |
| Lakloey Hill | 17,570 | | 9,595 | 7,975 | | |
| Moose Creek | 11,975 | | | 11,975 | | |
| Murphy | -0- | -0- | -0- | -0- | -0- | -0- |
| Musk Ox | 11,450 | 6,319 | 6,319 | 11,450 | | |
| Mt. View | 3,000 | | | 3,000 | | |
| Newby Park | 2,400 | | | 3,325 | | |
| North Star Fire District | 115,000 | 100,986 | 188,433 | 56,062 | | |
| Old Richardson | -0- | -0- | -0- | -0- | | -0- |
| Olnes West | -0- | -0- | -0- | -0- | -0- | -0- |
| Parksridge | 3,625 | -0- | -0- | 3,625 | -0- | -0- |
| Prospect Park | 2,700 | | | 2,700 | | |
| Ridgecrest | 1,350 | | | 1,350 | | |
| Scenic Heights | 2,100 | | | 2,100 | | |
| Sexburg | 1,831 | | 206 | 1,625 | | |
| Smith Ranch | 6,000 | 100 | | 7,500 | | |
| Spring Glade | 6,800 | | | 6,800 | | |
| Spruce Acres | 5,300 | | 1,435 | 2,500 | | 1,365 |
| Steese Fire | 40,000 | 92,800 | 121,425 | 11,375 | | |
| Summitt Drive | 15,000 | | | 16,000 | | |
| Sunny Hills Terrace | 1,250 | 5,000 | | 6,250 | | |
| Tanana Valley Fairgrounds | 15,000 | | | | 15,000 | |
| University Fire District | 372,996 | | 311,162 | 61,902 | 600 | |
| University Heights | 20,296 | | 2,246 | 8,050 | | 10,000 |
| University West St.Lights | 14,537 | | 14,537 | | | |
| Viewpointe | 9,000 | | 2,380 | 3,375 | | 3,245 |
| Violet Drive | 6,3000 | | | 6,300 | | |
| Vue Crest | 8,950 | | | 6,625 | | 2,325 |
| Wildview Acres | 21,025 | | | 21,025 | | |

Section 2.  Rate of Real Property Tax for Service Areas.  There is hereby levied for the various service area functions the following mill rate upon each dollar of taxable property shown on the 1982 assessment rolls within each service area:

| Service Area | Mill Rate |
|---|---|
| Aztec | 1.0 |
| Ballaine Lake | 1.0 |

| Service Area | Mill Rate |
|---|---|
| Ballaine Lake (S/W) | 5.0 |
| Birch Hill | .5 |
| College | 1.0 |
| Diane | .5 |
| Ester Volunteer Fire | 1.0 |
| Jennifer | 3.0 |
| Keeney Road | 1.0 |
| Kris Kringle | 1.0 |
| Lakloey Hill | 1.0 |
| Musk Ox | 1.0 |
| North Star Fire | 1.0 |
| Sexburg | 1.0 |
| Spruce Acres | 1.0 |
| Steese Fire | 2.0 |
| University Fire | 2.0 |
| University Heights | .5 |
| University West St. Lights | .4 |
| Viewpointe | .5 |

PASSED AND APPROVED THIS 27th DAY OF May, 1982.