**Edward A. DILLEY, d/b/a The Pop Shoppe, Appellant,**

v.

**KETCHIKAN GATEWAY BOROUGH, Appellee.**

**S–5408.**

Supreme Court of Alaska.

July 23, 1993.

Kenneth D. Lougee, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellant.

Teresa S. Williams, Borough Atty., Ketchikan, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

*OPINION*

COMPTON, Justice.

This appeal arises out of a sales tax dispute between the Ketchikan Gateway Borough (Borough) and Edward Dilley, a licensed pull-tab operator. Dilley was assessed over $400,000 for uncollected sales taxes, and interest, on gross revenues from pull-tab sales. The Borough Assembly denied Dilley's appeal and upheld the assessment. The superior court affirmed. We reverse.

---

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dilley operates pull-tab games [1] under a state license. Typically, non-profit organizations retain Dilley to operate a pull-tab game for fund-raising purposes. *See* AS 05.15.100(a). Pursuant to the statutory framework, these organizations pay Dilley a fee for operating the pull-tab game. Dilley then remits the net proceeds from pull-tab sales to the non-profit organization. *See* AS 05.15.112, .165(a), .210(23).

For a number of years, Dilley conducted pull-tab games in the Borough. Dilley paid sales taxes on the net proceeds of pull-tab sales, i.e., gross receipts minus prizes awarded. Disputing this calculation, the Borough requested remittance of sales taxes on the gross receipts from pull-tab sales. When this payment was not forthcoming, the Borough assessed against Dilley the uncollected amount of sales tax and interest, estimated to be in excess of $400,000.

Dilley appealed this decision to the Borough Assembly. After his appeal was denied, Dilley appealed to the superior court. Alaska R.App.P. 602(a)(2). In addition to arguing that the Borough's sales tax applied only to net proceeds of pull-tab sales, Dilley alternatively argued that the tax was unconstitutional, and that the tax did not apply to the sale of pull-tabs at all. The superior court affirmed the Borough's decision. This appeal followed.

1. A "pull-tab game" is defined as "a game of chance where a card, the face of which is covered to conceal a number, symbol, or sets of symbols, is purchased by the participant and where a prize is awarded for a card containing certain numbers or symbols designated in advance and at random." AS 05.15.210(28) (Supp. 1992).

2. Both the superior court and the Borough use the term "amusement services," even though this term is not used in the ordinance in question. This use becomes extremely questionable given the Borough's reliance on cases in which a statute specifically provides for taxation of "amusement services." *See Chilivis v. Fleming,* 228 S.E.2d 178 (Ga.App.1976). The ordinance in question provides only for taxation of "any nonexempt sale of services, rentals or tangible personal property." KGB 45.20.005.

## II. DISCUSSION

 At issue is whether the sale of pull-tabs is subject to the Borough's sales tax. As this is a question of statutory interpretation not involving agency expertise, the appropriate standard of review is the substitution of judgment test. *Public Employees' Local 71 v. State,* 775 P.2d 1062–63 (Alaska 1989).

The Borough levies a 1.5% sales tax "upon all rents, retail sales and services in the borough, except those hereinafter specifically exempted from the tax." Ketchikan Gateway Borough Code (KGB) 45.20.-010. "Retail sale" is defined to mean "any nonexempt sale of *services,* rentals or *tangible personal property* made to a buyer who intends to use the item purchased for his own personal use." KGB 45.20.005 (emphasis added). Dilley argues that pull-tabs are intangible personal property which are not subject to taxation under the ordinance. The Borough disputes this classification, arguing that pull-tab games are "amusement services" subject to taxation.[2]

Dilley's argument that the sale of pull-tabs constitutes a sale of intangible property, rather than a provision of services, is persuasive.[3] *Black's Law Dictionary* defines "intangible property" as follows:

> As used chiefly in the law of taxation, this term means such property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stocks,

Further, the language of the Borough Code itself militates against the Borough's expansive interpretation. The ordinance does not define "services." However, it does define "remuneration for services" to mean "gross remuneration received for furnishing labor and materials for accomplishing a specified result." KGB 45.20.-005. Dilley has not furnished labor and materials for a result specified by his patrons.

3. Dilley confuses the issue somewhat by focusing on the relationship between the non-profit organization and the pull-tab operator. While it is true that the transaction between these parties falls within the definition of "services for remuneration," this point is irrelevant. The transaction at issue is the sale of pull-tabs to individual pull-tab patrons.

bonds, promissory notes, copyrights, and franchises.

*Black's Law Dictionary* 809 (6th ed. 1990). In this case, the pull-tab represents the contractual right to receive payment of prize money if the patron uncovers a winning combination.[4]

This conclusion is supported by cases from other jurisdictions. For example, the Supreme Court of Minnesota held that a "Big Perfecta" dog race ticket constituted intangible personal property:

> The "Big Perfecta" ticket embodied [the right to receive money] contingent on the winning of a race or races by some dog or combination of dogs. When this contingency was satisfied, appellants received a check, which it is hard to characterize as anything other than "income ... from intangible personal property."

*Hillstrom v. Commissioner of Revenue*, 270 N.W.2d 265, 267 (Minn.1978).[5] Similarly, the United States Court of Appeals for the Fifth Circuit has described lottery tickets as "more in the nature of choses in action, being in some respects memoranda of conditional promises to pay." *United States v. Mueller*, 178 F.2d 593, 594 (5th Cir.1949).

Because pull-tabs constitute intangible personal property, they are not subject to the Borough's sales tax. The Borough's sales tax ordinance could be amended to cover pull-tab sales, as the state statutory scheme does. *See* AS 05.15.184 (providing for tax of 3% on gross receipts minus prizes awarded). However, the existing ordinance cannot be construed to cover the sale of pull-tabs.

### III. *CONCLUSION*

Pull-tabs are intangible property not subject to the Borough's sales tax ordinance. The decision of the superior court is RE-VERSED and the superior court directed to enter judgment consistent with this opinion.

---

**4.** Responding to the Borough's characterization of pull-tab sales as a service, Dilley points out that the sale of *any* intangible personal property can be so characterized. For example, a broker's sale of stock can be construed as an "investment service," and a banker's sale of a certificate of deposit as a "banking service." However, such characterizations ignore the underlying nature of the property involved.

**5.** The superior court's attempt to distinguish *Hillstrom* is unpersuasive. The superior court suggests that *Hillstrom* addressed only whether race track tickets were tangible property, not whether the sale of such tickets represented a service. However, the superior court ignored *Hillstrom*'s discussion of the nature of the property involved.