**KOTZEBUE LIONS CLUB, Appellant,**

v.

**CITY OF KOTZEBUE, Appellee.**

No. S–7570.

Supreme Court of Alaska.

April 3, 1998.

---

C.R. Kennelly, Stepovich, Kennelly & Stepovich, Anchorage, and Mark L. Nunn, Law Office of Mark L. Nunn, Anchorage, for Appellant.

Jerald M. Reichlin, Fortier & Mikko, P.C., Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE, and BRYNER, JJ.

## OPINION

COMPTON, Justice.

### I. *INTRODUCTION*

The Kotzebue Lions Club appeals from a judgment of the superior court holding that its charitable gaming activities are subject to the municipal sales tax of the City of Kotzebue. We affirm.

### II. *FACTS AND PROCEEDINGS*

The Kotzebue Lions Club, a charitable organization as defined by AS 05.15.690(5), conducts "pull tab" and bingo operations under a state permit. For a number of years, the City of Kotzebue has applied its general sales tax ordinance to these activities, and the Club has paid that tax. In 1993, following this court's decision in *Dilley v. Ketchikan*, 855 P.2d 1335 (Alaska 1993), the City amended its sales tax ordinance to expressly subject the Club's pull tab and bingo operations to the tax. The Club filed suit, claiming that the City lacks the authority to subject the Club's charitable gaming activities to a municipal sales tax. The superior court granted summary judgment in favor of the City and ordered the Club to remit all unpaid sales taxes. This appeal followed.

1. The Club also argues that since the Club is a charitable organization, article IX, section 4 of the Alaska Constitution renders the Club's property exempt from taxation, and the Club is therefore exempt from the City's sales tax. This claim fails. The tax at issue does not fall upon the property of the Club as such, but falls instead on the sale of property to gaming participants. The Club has cited no authority for the proposition that charitable organizations confer tax-exempt status on every transaction to which they are a party.

The Club also asserts that since gaming participants would actually pay the tax, they must all be

### III. *DISCUSSION*

#### A. *Standard of Review*

Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Estate of Arrowwood v. State*, 894 P.2d 642, 644 n. 2 (Alaska 1995). We conduct *de novo* review of the grant of summary judgment. *See Beilgard v. State*, 896 P.2d 230, 233 (Alaska 1995). We draw all factual inferences in favor of the non-moving party; the existence of a genuine issue of material fact precludes summary judgment. *Id.*

#### B. *The City May Tax Charitable Gaming Activities.*

The Club first argues that the City lacks the power to tax charitable gaming operations. The Club asserts both that the City's tax is preempted by state law and that, even if it were not preempted, such a tax is contrary to public policy. Neither argument has merit.[1]

##### 1. *The challenged sales tax ordinance is not preempted by state law.*

Preemption exists "in the absence of an express legislative direction or a direct conflict with a statute, only where an ordinance substantially interferes with the effective functioning of a state statute or regulation or its underlying purpose." *Liberati v. Bristol Bay Borough*, 584 P.2d 1115, 1122 (Alaska 1978). No state statute directly conflicts with municipal taxation of charitable gaming operations.[2] Nor has the Club cited to any express legislative direction against such a

joined as indispensable parties. This claim also fails. The Club cites no authority for the proposition that municipalities cannot bring actions to collect sales taxes unless they join every party to every taxable sale. Nor does the Club present any logical reason for adopting such a rule. Indeed, since joinder of all parties to taxed sales is normally impossible, it appears entirely appropriate for a municipality seeking to collect a sales tax to bring suit only against the entity charged with collection of that tax.

2. The Club asserts that a local tax directly conflicts with AS 05.15.150, which does not include "payment of local taxes" within its list of accept-

tax. The Club therefore can prevail only if the challenged sales tax "substantially interferes" with the state's regulatory scheme.

■ "Article X, section 1 of the Alaska Constitution prescribes that '[a] liberal construction shall be given to the powers of local government units.' Accordingly [this court] 'should not be quick to imply limitations on the taxing authority of a municipality where none are expressed.'" *Fairbanks North Star Borough v. College Utils. Corp.*, 689 P.2d 460, 464 n. 14 (Alaska 1984)(quoting *Liberati*, 584 P.2d at 1121). Preemption of local laws therefore requires more than the existence of state statutes concerning an activity. *See Liberati*, 584 P.2d at 1121–22 ("Merely because the state has enacted legislation concerning a particular subject does not mean that all municipal power to act on the same subject is lost."). In *Liberati* local taxation of fish sales, an activity which the state manages "to a very detailed extent" and subjects to a specific tax, did not "substantially interfere" with the state scheme. *Id.* at 1122 ("[I]t would obviously be wrong to conclude merely because [the state] taxes sales that a municipality is thereby precluded from taxing the same sales."). Since "the ordinance at issue [wa]s intended only to raise money, and ha[d] no regulatory component," the court saw "no direct or indirect conflict between the State's regulation of fish harvesting or fish sales and the ordinance in question." *Id.*

■ While the state regulates gaming extensively, such regulation is not so all-encompassing as to foreclose all supplemental regulation by local entities. State gaming regulations include a requirement that such activities take place only under state permit,[3] a use restriction on gaming proceeds,[4] and a three percent tax on net pull-tab proceeds.[5] However, this regulatory scheme, while detailed, is no more comprehensive than that which governs commercial fishing, an activity which ranks among the most heavily regulated industries in Alaska.[6] *See Cole v. State*, 828 P.2d 175, 178 (Alaska App.1992) (holding that commercial fishing qualifies as a "heavily regulated industry"). Yet under *Liberati*, state regulation of commercial fishing does not foreclose local taxation of fish sales. *Liberati*, 584 P.2d at 1122. Like the ordinance at issue in *Liberati*, the sales tax at issue here "is intended only to raise money, and has no regulatory component." *Id.* The City's sales tax therefore does not "substantially interfere" with state regulations to any greater degree than did the tax at issue in *Liberati*. Indeed, the statutes governing gaming activities expressly contemplate municipal taxes in one provision.[7] Moreover, *Dilley* indicates in *dicta* that a municipal tax on gaming would be permissible. *Dilley*, 855 P.2d at 1337. State regulation of charitable gaming therefore does not preclude municipal taxation of such activity.[8]

2. *Local taxation of the Club's gaming operations does not violate public policy.*

■ The Club also asserts that municipal taxation of charitable gaming would run

---

able uses for the proceeds of charitable gaming. However, that list also does not include payment of the state tax contained in AS 05.15.184. This provision serves as a general use restriction on the proceeds, and not as a ban on all gaming taxes.

**3.** *See* AS 05.15.100(a).

**4.** *See* AS 05.15.150(a) (restricting use of gaming proceeds to "political, educational, civic, public, charitable, patriotic, or religious uses").

**5.** *See* AS 05.15.184.

**6.** While charitable gaming is the subject of a single chapter of Title 5 of the Alaska Statutes, nearly all of Title 16 is dedicated to regulation of commercial fishing. Title 16 contains detailed restrictions on commercial fishing activities, in-

cluding licensing requirements for the taking of fish, *see* AS 16.05.330–710, and criminal penalties for violations, *see* AS 16.05.722–723. In addition, commercial fishing is subject to regulation and oversight by the Alaska Department of Fish and Game.

**7.** The definition of "adjusted gross income," by which operators of the games are evaluated and regulated, is "gross income less prizes awarded and state, federal, and municipal taxes paid or owed on the income." AS 05.15.690(1).

**8.** The Club argues that by enacting AS 05.15.184, the state has implicitly reserved the power to tax gaming operations to itself. This argument fails. AS 05.15.184 does not create a state power of taxation, but instead actually levies a tax. The statute makes no mention of any reservation of the power to tax such activities to the state alone.

counter to public policy, and therefore should be prohibited.[9] This claim fails. The state legislature has enacted a tax on gaming, and has thereby determined that public policy permits such taxation. *See* AS 05.15.184. The Club neither challenges the state tax, nor explains why municipal taxation of the same activity would implicate policy concerns to any greater degree than does state taxation. This court's statement in *Dilley* to the effect that municipal taxation of gaming would be permissible also suggests a lack of any broad policy interest against local gaming taxes. *Dilley*, 855 P.2d at 1337.

### C. The Sales Tax Ordinance Was Validly Enacted.

Assuming that the City possessed the authority to tax gaming operations, the Club contends that the recent amendment to the sales tax ordinance, which expressly includes bingo and pull-tab sales within the scope of taxable sales, was enacted through improper procedures. The Club notes that the City was required to follow the procedures set forth in AS 29.25.020 in adopting that ordinance. Alaska Statute 29.25.020(b)(3) provides that "at least five days before the public hearing a summary of the ordinance shall be published together with a notice of the time and place for the hearing." The Club contends that the procedure by which the amendment was adopted did not satisfy these requirements.[10] This claim fails as well.

### 1. A typographical error in the City's Notice of Hearing on Ordinance did not invalidate the amendment to the sales tax.

■ The Club contends that since the ordinance amending the sales tax was mis-

identified through a typographical error as Ordinance 93–08, instead of 93–07, "the Ordinance was not published correctly" and is therefore invalid. This claim lacks merit. Alaska Statute 29.25.020(b)(3) requires publication of "the time and place" of the hearing on a proposed ordinance. The Club has not alleged that the typographical error in the published notice interfered in any way with the ability of the Club, or the general public, to comment on the proposed ordinance. Nor has the Club alleged that it sought a copy of the mis-identified measure and was frustrated as a result of this error. Any interested party reading the notice was directed to the right meeting, at the right time, at the right place. Since the Club has not alleged or demonstrated that the error had any practical effect, the error is harmless. *See* 5 Beth Buday & Victoria Braucher, *McQuillin Municipal Corporations* § 16.78 (3d ed. rev.vol.1996) ("An error in the printing of a word in the publication of an ordinance will not affect its validity where it is plain from the context what word was intended.").[11]

### 2. The published summary, while imperfect, did not render the amending ordinance invalid.

■ The Club also claims that the published summary of the amendment was inadequate in that it stated only that the proposed ordinance would amend the definition of taxable sales. This contention also fails.

Alaska Statute 29.25.020(b)(3) does not articulate the level of detail that the published summary of an ordinance must contain. However, in *Fairbanks North Star Borough*, 689 P.2d at 462, this court indicated that a

---

**9.** In support of this argument, the Club contends that allowing the City to receive revenue from gaming would be to place the City "in the gambling business." However, the Club notes that the City conducts its own gaming operations. The City therefore already is in the "gambling business," and receives revenue from gaming wholly apart from its taxation of the Club. This argument therefore lends little weight to the Club's position.

**10.** The Club also contends that several factual disputes exist on this point that preclude a grant of summary judgment. However, the parties do not dispute the facts concerning what was published, but rather the legal consequences of those facts.

**11.** The Club also notes that "the Minutes did not reflect that the ordinance was read at the Public Meeting." This alleged error is of no greater significance than the claim concerning the typographical error. *See* 62 C.J.S. *Municipal Corporations* § 416(b) ("[N]oncompliance with merely formal requirements in the manner of enactment ordinarily is considered by the courts as no ground for declaring an ordinance void.").

summary meets the statutory requirements so long as it describes "clearly, if generally, what the proposed ordinance would accomplish." *Fairbanks North Star Borough* involved an ordinance which fixed the rates of property tax for slightly over one-third of the service areas in the borough. *Id.* The published summary of that ordinance described the measure as "Fixing the Rate Of Real Property Tax Levy For [the borough] Service Areas For the 1982/83 Fiscal Year." *Id.* (quoting *Fairbanks Daily News–Miner,* May 22, 1982). This summary was arguably misleading, since less than half of the service areas would actually be affected. However, it was adequate to satisfy the statutory requirements [12] since any misconception created by this notice "would presumably motivate th[e taxpayers] to attend the hearing," rather than prevent affected parties from realizing that their interests were at stake. *Id.* at 462–63 n. 7.

The summary which the City published described the ordinance as "amending the definition of 'sale' under KMC 3.20.010(E)." While this summary was literally accurate, it was incomplete in that it did not mention its purpose of expressly including bingo and pull-tab operations within the scope of the tax. However, like the summary at issue in *Fairbanks North Star Borough,* this summary indicated that the ordinance had a broader effect than it actually did. A person reading the summary would expect the ordinance to affect all sales taxes, rather than taxes on gaming operations alone. As a result, any uncertainty which the summary caused would have only the effect of inducing more people to attend the meeting, as was the case in *Fairbanks North Star Borough.* This summary was adequate.

12. The statute at issue was former AS 29.48.150, which outlined procedures for passage of local ordinances which are similar, but not identical, to the present requirements.

13. Even were we to conclude that the City's amended tax ordinance is invalid, the Club would be entitled to no relief. Prior to the 1993 amendment, the City's ordinance defined taxable "retail sales" to include "every sale or exchange of property, of every kind and description." Former Kotzebue Municipal Code 3.20.010. Property "of every kind and description" would include intangible property such as bingo and pull-tab entries. *Id.* Indeed, both the City and the

## IV. CONCLUSION

The City has the authority to tax charitable gaming activities. The City's amended tax ordinance is valid.[13] We AFFIRM.

BRYNER, Justice, with whom FABE, Justice, joins, concurring.

Although I join in the court's opinion in all other respects, I do not agree with its conclusion that the City complied with its statutory duty to publish a clear and adequate summary of its proposed ordinance amending the definition of taxable sales.

The court agrees with the Lions Club that the published summary was "incomplete in that it did not mention [the proposed ordinance's] purpose of expressly including bingo and pull-tab operations within the scope of the tax." Op. at 925. Nevertheless, relying on *Fairbanks North Star Borough v. College Utilities Corp.,* 689 P.2d 460 (Alaska 1984), the court concludes that the summary passed muster under AS 29.25.020(b)(3) because it was "literally accurate," Op. at 925, and because it was overly inclusive in the sense that "any uncertainty which the summary caused would have only the effect of inducing more people to attend the meeting, as was the case in *Fairbanks North Star Borough.*" Op. at 925.

The court's reading of *Fairbanks North Star Borough* is troublesome. The published notice at issue in *Fairbanks North Star Borough* was a single summary that described two proposed ordinances, one appropriating funds for all fifty-seven service areas in the borough and another fixing tax rates for twenty of the fifty-seven.[1] *See id.* at 462.

Club apparently believed that the pre-amendment sales tax applied to the Club's activities. The City asserts that the amendment has no effect on its operations or collection of the tax. The Club does not dispute this claim, nor the City's claim that the Club regularly paid the tax prior to the amendment. The Club's challenge to the tax would therefore fail even if the amendment were invalid.

1. The summary stated: "An ordinance amending the FY 1982–83 budget by appropriating funds for the borough service areas and fixing the rate of real property tax levy for these service areas for the 1982/83 fiscal year." *See id.* at 462.

The primary challenge to this summary was that it was vague in describing the tax-rate ordinance because it failed to specify the proposed new mill rate for each affected service area. *See id.* at 462–63. In addressing the vagueness challenge, we observed that the summary "described clearly, if generally, what the proposed ordinance would accomplish," *id.* at 462, and we reasoned that greater specificity could not be countenanced. *See id.* at 463. We thus expressly found that "the summary [was] not 'vague,'" *id.* at 462, and that it "adequately and accurately summarized the proposed ordinance." *Id.* at 463.

In a footnoted comment, we separately addressed the "notice aspect" of the summary, which we found "not perfect" because it was worded in a way that "could mislead the reader into thinking that the proposed ordinance would set property tax rates for more service areas than it actually affected." *Id.* at 462–63 n. 7. We dismissed this problem as insignificant, noting that, "if anything, more readers would expect to be affected by the ordinance as described [in the summary], and their misconception ... would presumably motivate them to attend the hearing." *Id.*

As I read *Fairbanks North Star Borough,* it stands for the modest proposition that a clear summary of an ordinance's subject matter and purpose will not be invalidated merely because its wording describes the potential scope of the ordinance's coverage too broadly. In today's decision, however, the court conflates *Fairbanks North Star Borough*'s separate treatment of vagueness and overly inclusive notice to suggest that overly inclusive notice can cure vagueness. In declining to squarely address whether the published summary in the present case adequately de-

scribed the subject and purpose of the City's proposed sales tax ordinance, the court seemingly holds that as long as the summary was "literally accurate," Op. at ——, and gave overly inclusive notice, *id.,* its vagueness is of no concern.

This test of compliance makes little sense, because the vaguer a summary, the more likely it is to be both literally accurate and overly inclusive. Under this test, vagueness itself becomes a redeeming virtue.[2]

When a published summary is vague in its description of an ordinance's subject and purpose, and when its own vagueness is the cause of its overly inclusive public notice, the public has no basis for informed choice; it must decide whether to attend a meeting on the off-chance that something of actual interest might be considered. The predictable result of such guesswork notice is reduced, not enhanced, public participation: members of the public whose interests are actually affected may be lulled into complacency by the innocuous generality of the vague description.[3]

In the present case, the published summary is overly inclusive precisely because it does not describe as clearly as it might the subject and purpose of the City's proposed sales tax ordinance: to include bingo and pull-tab sales within the definition of taxable sales. Unlike the situation in *Fairbanks North Star Borough,* the situation here permits a strong argument that the published summary did not "clearly" or "adequately and accurately" describe "what the proposed ordinance would accomplish." 689 P.2d at 462–63. In my view, the issue of statutory compliance thus presents a very close question.

2. If literal accuracy and overly inclusive notice are enough to comply with the statutory notice requirement—as the court suggests they are—then the City's summary in the present case would have been adequate if, instead of saying "amending the definition of 'sale' under KMC 3.20.010(E)," it said something like "amending a tax ordinance," or even "amending an ordinance." Each of these formulations is "literally accurate," and each is overly inclusive.

3. For example, notice of an ordinance "amending the definition of 'sale' under KMC 3.20.010(e)," may mean little to anyone, leading no one to attend the City assembly meeting. In contrast, notice of an ordinance "amending the definition of 'sale' to include bingo and pull tab sales" may mean nothing to most people, but it will mean very much to an interested few, who will attend and participate. The court's view that overly inclusive notice will invariably generate greater attendance in such cases is questionable.

The court's reliance on a questionable interpretation of *Fairbanks North Star Borough* to decide this issue is troubling because the issue itself need not be decided. The harmless error rationale set out in footnote 13 of the court's opinion offers a straightforward, fully sufficient, and clearly correct alternative basis for concluding that the City properly required the Lions Club to pay the sales tax. Given the ready availability of this alternative rationale, I see no reason for the court's insistence on creating a new and potentially problematic legal rule.

Accordingly, I join in the court's opinion except as to Part III.C.2. As to that part of the opinion, my agreement with the court is limited to the harmless error rationale set out in footnote 13.